Bruce DRUMM, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Karen DRUMM, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Nos. 87–SC–848–MR, 87–SC–849–MR.

Supreme Court of Kentucky.

Jan. 18, 1990.

David Murrell, Public Advocate, Louisville, for appellant, Bruce Drumm.

Elizabeth Shaw, Richmond, for appellant, Karen Drumm.

Frederic J. Cowan, Atty. Gen., Lana Grandon, Asst. Atty. Gen., Frankfort, for appellee.

LEIBSON, Justice.

Bruce Drumm has been convicted of first-degree rape and first-degree sodomy of his daughter, A.D. (then 3–years old), and first-degree sodomy of his son, S.D. (then 6–years old). Karen Drumm, his wife and the children's mother, has been convicted for the same offenses based on complicity. Both have been sentenced to life imprisonment for each of the three offenses, the sentences to run concurrently. They appeal to the Supreme Court as a matter of right.

The Commonwealth's theory of the case was that the acts charged, and other deviant sexual behavior involving the children, were part of the couple's degenerate lifestyle. The Commonwealth, by evidence, argument and innuendo, introduced a vast array of deviant, sordid and bizarre sexual

activity before the jury, including the suggestion that the children were used as part of a scheme to produce and sell pornography.

One of the major problems with this case is the substantial amount of testimony devoted to deviant sexual misbehavior of all kinds, much of which classifies as uncharged collateral criminal activity. Because these convictions must be reversed on other grounds, we will not undertake in this opinion to sort out which portions of this evidence were admissible, and which were not, and wherein objection to inadmissible evidence was preserved for appellate review by appropriate contemporaneous objection. Sorting this out is probably a practical impossibility given the confused state of the record. It suffices to say that evidence should have been admitted or excluded by applying recognized rules and exceptions. The "General Rule" is "[e]vidence of the commission of crimes other than the one that is the subject of a charge is not admissible to prove that an accused is a person of criminal disposition." Lawson, *The Kentucky Evidence Law Handbook,* 2d ed., Sec. 2.20(A) (1984). Before admitting such evidence the burden is on the Commonwealth to establish a reason to apply some well-defined exception. The principle involved is thus stated in Rule 404(b) of the Federal Rules of Evidence:

> "*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Before any of these reasons for making an exception applies, it must *first* be an issue in the case.

Specifically, with reference to uncharged acts of sexual misconduct by the accused with his alleged victim, in *Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549 (1985), we stated that evidence of "independent sexual acts" would be "admissible *if such acts are similar to that charged* and

not too remote in time, *provided the acts are relevant to prove* intent, motive or a common plan or pattern of activity." [Emphasis added.] *Id.* at 552.

The problem in the present case is that the trial proceeded, not on the premise that such evidence is inadmissible unless there was reason to make an exception, but from the opposite premise. As stated in Lawson, *supra,* Sec. 2.20, pp. 42–43, before admitting such evidence the trial judge should consider:

> "*One*—Is the evidence relevant for some purpose other than to prove criminal predisposition of the accused?
>
> . . . .
>
> *Two*—Is proof of the other crime sufficiently probative of its commission to warrant introduction of the evidence against the accused?
>
> . . . .
>
> *Three*—Does the probative value of the evidence outweigh its potential for prejudice to the accused?"

In the present case there was considerable comment, and some highly questionable evidence, involving sexual activity not of a similar nature to the crimes charged, which was inadmissible if properly objected to. There is extensive debate as to when, where and whether error was preserved. On retrial the court should require the Commonwealth to establish a proper basis before admitting evidence of collateral criminal activity, including a need for such evidence, and that its probative value outweighs its inflammatory effect. On the other hand, defense counsel should delineate what evidence is objected to and why.

■ The major issue on both appeals is the admissibility of various out-of-court statements incriminating the appellants made by both children to various persons involved in their care and treatment after they were removed from the appellants' home. In varying amounts these persons were also involved in investigating and preparing the various cases against the appellants, either the criminal cases, the Department of Welfare's child abuse and neglect charges, or both. The persons testifying to these incriminating statements included so-

cial workers, a foster parent, a police officer, two psychologists and a psychiatrist, and personnel at the Home of the Innocents where the children were lodged in public care for a portion of the time. The trial court admitted these statements pursuant to H.B. 664, Ch. 439, Ky. Acts (1986), codified as KRS 421.355, which states as follows:

"(1) Notwithstanding any other provision of law or rule of evidence, a child victim's out-of-court statements regarding physical or sexual abuse, or neglect of the child are admissible in any criminal or civil proceeding, including a proceeding to determine the dependency of the child, if, prior to admitting such a statement, the court determines that:

(a) The general purpose of the evidence is such that the interest of justice will best be served by admission of the statement into evidence; and

(b) The statements are determined by the court to be reliable based upon the court's consideration of the age and maturity of the child, the nature and duration of the abuse, the emotional or psychological effects of said abuse or neglect upon the child, the relationship of the child to the offender, the reliability of the child witness, and the circumstances surrounding the statement.

(2) If the statement is admitted into evidence each party may call the child to testify and the opposing party may cross-examine the child."

At the outset we note that the statute requires none of the traditional reasons for making exceptions to the hearsay rule. Further, although it contemplates a preliminary hearing and findings before a child victim's out-of-court statements are admitted, the record before us is devoid of such preliminary hearing and it is at best debatable whether the trial court made all of the findings specified in the statute. Numerous objections were made against the use of these statements, particularly as to statements allegedly made by the 3-year old daughter whom the court ruled incompetent to testify, although when and where the objections were sufficient to preserve a claim of error is debatable.

In many instances the out-of-court statements were made under questionable circumstances where, even utilizing the statute, even had there been a preliminary determination such as the new statute contemplates, admitting the statements would be an abuse of statutory grant of discretion. Again, we need not decide where error was sufficiently preserved, and where it was not, because the new statute is, in its entirety, an unconstitutional exercise of judicial rule-making power by the General Assembly, so the statute should not have been utilized in any event.

This new statute is a companion to KRS 421.350, which we declared unconstitutional in *Gaines v. Commonwealth*, Ky., 728 S.W.2d 525 (1987). It is unconstitutional for the same reasons. As in *Gaines*, the present statute transgresses established procedure relating to the competency of children to testify as witnesses, usurps the power of the judiciary to control procedure, and violates Sections 27 and 28 of the Constitution of Kentucky. These Sections establish the judiciary as "a separate body of majistracy" and constitutionalize the doctrine of separation of powers. Whereas, prior to the new Judicial Article enacted in 1975, the line between judicial and legislative power was not clearly defined, such is no longer the case. The Kentucky Constitution, Sections 115 and 116, establish the judicial rule-making power. Section 116 specifies *inter alia*, that the Supreme Court shall prescribe the "rules of practice and procedure for the Court of Justice." As in *Gaines*, we will not extend comity to this statute because it fails the test of a "statutorily acceptable" substitute for current judicially mandated procedures. Fundamental guarantees to the criminally accused of due process and confrontation, established by both the United States and Kentucky Constitutions, are transgressed by a statute purporting to permit conviction based on hearsay where no traditionally acceptable and applicable reasons for exceptions apply. The reasons for exceptions to the hearsay rule are grounded not just on need, but on guarantees of trustworthiness which are the substantial equiv-

alent of cross-examination. The statute presently under consideration fails to meet such essential requirements. As stated in *Commonwealth v. Willis*, Ky., 716 S.W.2d 224, 233 (1986), Leibson, J., concurring:

"It is important to protect the sensibilities of a child, but it is more important to protect the accused's right to properly defend himself within the law as guaranteed by the Constitution. No person should be convicted of a felony and sent off to prison when he has not been able to defend himself as guaranteed by the Constitution of the United States and the Constitution of the Commonwealth of Kentucky."

In Bruce Drumm's case, the Brief for the Commonwealth concedes "that the hearsay statements of A.D. (the daughter) could not be admitted under any of the generally accepted exceptions to the rule prohibiting the admission of hearsay testimony.... that A.D. was not 'available' as a witness and that the various social workers and doctors should not have been allowed to testify about the hearsay statements made by A.D. pursuant to KRS 421.355."

Because S.D. (the son) was called as a witness and testified, the Commonwealth argues "that the out-of-court statements of S.D. were properly admitted at trial pursuant to KRS 421.355 and *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969)." KRS 421.355 is unconstitutional, and as to *Jett*, there are two further problems. The first is that because the case was tried pursuant to KRS 421.355 and not under *Jett*, the prosecutor failed to lay the precise foundation for the use of a witness' prior contradictory statement as required under CR 43.08. This rule requires that a party offering a prior inconsistent statement must lay a foundation, first by inquiring of the witness as to particulars of time, place and circumstance, and then by confronting the witness with the substance of the statement allegedly contradictory to his present testimony. In *Norton v. Commonwealth*, Ky., 471 S.W.2d 302, 306 (1971), we stated "the rule of *Jett* may not be applied without compliance with its plainly stated prerequisites." In *Fisher v. Duckworth*, Ky., 738 S.W.2d 810, 813 (1987), we were faced

with a similar problem and stated "we have no rule of evidence that permits one to make a goulash, jumbling evidence from different rules, and thus to qualify evidence as admissible which would not otherwise qualify."

Next, there seems little doubt, once the Commonwealth concedes that the evidence regarding the hearsay statements made by A.D. was inadmissible, that the use of such evidence so seriously prejudiced the case involving the offenses charged as to S.D. that the trial on these charges was fundamentally unfair, and a retrial is required.

We note that while on the one hand, as to Bruce Drumm, the Commonwealth "agrees" that the case should be reversed as to the offense against the daughter, it makes no similar concession in the case against Karen Drumm, which proceeded on the same evidence. We conclude that, having conceded error as to Bruce Drumm, consistency would require a finding of the same error as to Karen Drumm.

What evidence of the children's out-of-court statements will be admissible on a retrial? Use of *Jett* is premised upon the witness, S.D., continuing to deny his previous statements, as he did at the first trial. However, there are two further bases for the use of previous out-of-court statements which were argued upon this appeal, which apply not just to S.D. but to both children, and which must be considered by the trial court in the event of a retrial. These questions involve what evidence was admissible under statements to a physician for the purpose of diagnoses or treatment, and what evidence from the records from the Home of the Innocents was admissible under the exception to the hearsay rule for regular entries in the course of business. Having held KRS 421.355 unconstitutional, these two evidentiary questions will be important in the event of a retrial.

The first issue involves out-of-court statements made by A.D. and S.D. to Drs. Richard K. Johnson and Edward Burla, clinical psychologists, and Dr. Daniel M. Tucker, psychiatrist. The question is which out-of-court statements by the chil-

dren to these doctors incriminating the defendants are admissible under the exception to the hearsay rule for "statements made to a physician by a patient relating to matters which are necessarily important for him to know in order that he may make a correct diagnosis and render proper and effective treatment." *Equitable Life Ins. Soc'y v. Fannin*, 245 Ky. 474, 53 S.W.2d 703, 706 (1932). More recently, in *Souder v. Commonwealth*, Ky., 719 S.W.2d 730 (1986), referring specifically to "the admissibility of testimony from two physicians who participated in the medical examination and investigation of the abused child," we stated:

> "[T]his exception is premised upon the admissibility of information ... 'important to an effective diagnosis or treatment.' [Citation omitted]. This does not include information provided as part of a criminal investigation, nor does it usually include information identifying the name of the wrongdoer because normally the name of the wrongdoer is not essential to treatment." *Id.* at 735.

The problem is that heretofore our Kentucky cases limit the use of this exception to statements made to a treating physician. Lawson, *supra*, Sec. 8.45. In the present case, particularly with reference to Dr. Tucker who saw these children initially on reference from Social Services both to investigate for prosecutorial purposes and to diagnose and treat their emotional problem, and who thereafter had such children in his care for the better part of three years, it is difficult to differentiate which statements properly qualify as statements to a treating physician and which do not. He was partly involved in treating the children and sometimes also wearing his "detective hat."

■ The time has come to expand the hearsay exception for statements for purposes of medical diagnosis or treatment to conform to the modern approach as represented by Rule 803(4) of the Federal Rules of Evidence. Fed.R.Evid. 803(4) blurs the distinction between treating and testifying physicians while it does not completely abolish it. The Federal Rules shift the emphasis in expert testimony to a different ground, viz., whether the statement is "the kind of information which the expert customarily relies upon in the practice of his profession." *Buckler v. Commonwealth*, Ky., 541 S.W.2d 935, 939 (1976), on a slightly different subject, recognizes this shift in emphasis.

Fed.R.Evid. 803(4) includes in the list of hearsay statements admissible "even though the declarant is available as a witness":

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

We now adopt Fed.R.Evid. 803(4) for this and future cases.

In applying this rule to children allegedly victims of sexual offenses, Federal courts have generally followed a liberal approach. *See United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), cert. den., 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Renville*, 779 F.2d 430 (8th Cir.1985); and more recently, *Morgan v. Foretich*, 846 F.2d 941 (4th Cir.1988). The Concurring Opinion by former Associate Justice Lewis Powell, U.S. Supreme Court retired, in *Morgan v. Foretich*, is a particularly incisive analysis of the proper application of Fed.R.Evid. 803(4) to a case where the charge is sexual abuse of a child of tender years, as in the present case. Powell states:

> "Rule 803(4) appears to have abolished the common-law distinction between those statements made while consulting a 'physician' for purposes of examination and statements made while consulting him for purposes of testifying as a witness.... [S]o long as the statements made by an individual were relied on by the physician in formulating his opinion, they are admissible. [Citations omitted]. Although this holding ignores the traditional common-law prong of the rule that requires that the statements be made for

the purposes of seeking treatment, it has clear support in the Advisory Committee notes to Rule 803(4)."

This approach eliminates problems in applying the rules caused by the "treating physician" restriction, problems as to which interviews are treatment and which are not, problems as to whether the child is too young to realize she is receiving treatment, and problems as to the child's present testimonial incompetence. Our approach in *Miller v. Watts*, Ky., 436 S.W.2d 515, 521 (1969), already covers this in part because it permits evidence of "history related to a treating doctor by a parent, custodian, guardian of an infant of tender years."

Under the approach taken by Justice Powell in *Morgan v. Foretich, supra*, the child's age or testimonial incompetency is not an insurmountable problem, nor need we decide whether these out-of-court statements were made exclusively for purposes of treatment. But this does not eliminate such factors from the trial court's consideration. Particularly with reference to the "treating physician" requirement, Justice Powell takes note that statements made to a doctor who is consulted solely "for purposes of testifying as a witness," "has less inherent reliability than evidence admitted under the traditional common-law standard underlying the physician treatment rule." 846 F.2d at 952. Justice Powell would resolve the question of admissibility by ordering the trial court to exercise its "discretion" to decide whether the evidence should be "excluded ... on the ground its prejudicial effect outweighs its probative value. *See* Fed.R.Evid. 403." He states:

> "Rather than conclude, however, that Dr. Harrison's testimony should have been admitted into evidence, I would leave this question for reconsideration at the trial of this case, if there should be a retrial."

In the event of a retrial in the present case, we direct the trial court to decide the hearsay question regarding each of the various out-of-court statements by the children to the psychiatrist and the psychologist by making a judgment as to whether "prejudicial effect outweighs ... probative value," taking into account that when such statements are not made for the purpose of treatment they have "less inherent reliability than evidence admitted under the traditional common-law standard underlying the physician treatment rule."

In each instance the trial court must also decide, in addition to the hearsay question, the relevancy question. This means only the statements that would qualify as relevant to an issue in the case if the declarant were testifying as a witness at the trial are admissible in any event. Collateral criminal activity is *not* admissible, subject to well recognized exceptions bearing specifically on some issue in the case.

Next, we turn to the business records of the Home of the Innocents. These were admitted into evidence without objection *except* as to those portions which expressed the opinions and conclusions of social workers. Those objections should have been sustained. As stated in *Cabinet for Human Resources v. E.S. and H.S.*, Ky., 730 S.W.2d 929 (1987), entries in the case record made by social workers which constituted statements of factual observations are admissible under the business entry exception to the hearsay rule, but those statements expressing opinions and conclusions are not. Also, as stated in *CHR v. E.S. and H.S.*, there is a "special problem underlying the admissibility of [the social workers'] opinion and conclusions"; such do not qualify as "expert testimony." Thus, as in *CHR v. E.S. and H.S.*, there was trial error in the admissibility of these entries "in toto." In the event of a retrial, the trial court must distinguish between factual observations, which may include the children's out-of-court statements depending on the circumstances, and the opinions and conclusions of the social workers, ruling out the latter.

The appellant, Bruce Drumm, further complains that he was tried in violation of his right to a speedy trial. The record shows that the delays occasioned after he asserted such right were substantially of his own making.

The appellant, Bruce Drumm, further complains that he was prejudiced because he was denied a trial separate from his

wife, charging that evidence otherwise inadmissible relating to the "lifestyle" of Karen and Bruce Drumm was introduced at his wife's behest to show that she was a victim rather than a principal in their sexual aberrations. The simple answer to this is that no evidence of unrelated sexual activity should have been admitted, or should be admitted at a next trial, unless such evidence qualifies under recognized principles of relevancy. This means no evidence should be admitted against Bruce Drumm at a joint trial which would not be admissible at his separate trial.

The remaining issues raised by the appellants need not be addressed because they should not reoccur.

In both cases convictions on all charges are reversed, and the case is remanded to the trial court for further consideration in conformity with this Opinion.

GANT, LAMBERT, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents by separate opinion in which STEPHENS, C.J. and COMBS, J., join.

VANCE, Justice, dissenting.

I dissent from that portion of the majority opinion which adopts Fed.R.Evid. 803(4). When, as here, we adopt a federal rule of procedure, we must recognize that the rule is not limited in application to the facts of this case. It may have wide-ranging applications to other factual situations not now before us and to which we have given no consideration at all. The question of the adoption of this federal rule has not been briefed. We have not heard argument on the question, and the adoption of a new rule of evidence in this manner flies squarely in the face of our announced policy submitting the proposed adoption of rules to a discussion by the members of the Kentucky Bar Association before they are adopted. We have just completed a two-year process concerning the proposed adoption of Kentucky Civil Rules of Evidence.

Contrary to our established policy, the majority has adopted a new criminal rule of evidence without any discussion or attempt to discover what ramifications may lie hidden in its adoption. Ostensibly, it is adopted to pave the way for the admission into evidence of out-of-court statements of young children and infants made to a physician who was consulted for the purpose of giving testimony at trial. The rule would apparently utilize admission of out-of-court statements insofar as they are pertinent to *diagnosis* and *treatment*, whether or not they are made for the purpose of *diagnosis* and *treatment*. Heretofore, such out-of-court statements have been admitted only when made to a treating physician, not one employed to testify. There is a good reason for this limitation.

A statement to a treating physician to make a diagnosis and to give proper treatment by a person who wants to get well and knows that his recovery may well depend on his telling the truth to his doctor, has an inherent indication of reliability. It is so likely that one would tell the truth under such circumstances that the statement is sufficiently trustworthy to be admitted into evidence. The same is not true, however, when the physician wears the hat of a paid investigator who has been consulted to testify at trial. The statements made to him are not made under any urgency to tell the truth because the likelihood of recovery of one's health does not depend upon it. There may be cases where the out-of-court statements to the physician employed to testify were precipitated by the basest of motives, including a possible motive of an adult to coach an infant to make statements designed to secure the conviction of a particular accused person.

The adoption of this rule may also have implications for the future in several cases relating to statements made by an unavailable witness to a physician consulted for the purpose of testifying at trial. The purpose of such declarant might not be to insure the recovery of his health, but rather to insure the recovery of a judgment.

I think, also, that we should be particularly cautious about admitting into evidence the out-of-court statements to a physician of any child who is not competent to testify in person because a child whose

 

understanding is not sufficient to allow him to testify might well also fail to understand that the recovery of his health is dependent upon the truth of his statements to the doctor.

The reason we exclude hearsay testimony in any case is that the declarant is not subject to cross-examination and that there is no sufficient guarantee of the trustworthiness of the out-of-court statement. That is the difficulty here. There is no way to determine the trustworthiness of the out-of-court statements of a child whose lack of understanding renders him incompetent to testify. If the out-of-court statements are not allowed in evidence, a child molester may go free. If they are allowed into evidence, an entirely innocent person may be imprisoned.

Our failure to explore the potential consequences of this ruling should preclude its adoption in such a cavalier fashion.

STEPHENS, C.J., and COMBS, J., join in this dissent.