# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-KA-00440-COA

**JOSHUA LEWIS QUINTANA A/K/A JOSHUA L. QUINTANA A/K/A JOSHUA QUINTANA**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2025 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: STACY L. FERRARO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/09/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    A man faced felony charges for the improper touching of his minor niece. At trial, she testified about his abuse. While she was on the stand, two spectators gestured towards her and clapped after her testimony. The trial court admonished the spectators outside the presence of the jury. Defense counsel moved for a mistrial, which the trial court denied.

¶2.    The jury found the man guilty on both counts. He now appeals, arguing that he should have received a mistrial due to the "coaching" of the witness. Finding the trial court was within its discretion to deny a mistrial, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     In March 2025, Joshua Quintana stood trial and faced multiple felonies for allegations that he repeatedly and improperly touched his 14-year-old niece, Amy.[1]  At trial, she took the stand as the State's first witness, and described the improper advances made by her uncle. Defense counsel then cross-examined her.

¶4.     Next, the trial court asked if the State wanted redirect.  Almost simultaneously, the trial court seemed to notice a slight disruption from the audience.  As best can be ascertained from the record, two spectators on the front row were making hand gestures to Amy after her testimony.

¶5.     The trial court stated, "[h]ang on just a minute.  We're going to take a brief recess." Presumably without noticing the spectators' actions, the State asked to proceed to a brief redirect of the witness.

¶6.     After the State concluded its questioning of Amy, the trial court ordered a recess and excused the jury.  Immediately thereafter, the trial court admonished the spectators:

> [A]fter explanation in this courtroom about what it takes to get through a trial, I have to sit here and watch the two of you on that front row indicate to this witness your approval or disapproval of testimony – whatever the reason you're doing it – comfort or otherwise, that is inappropriate and in contempt of court.  And, then, I have to make you sit down, and you used a cuss word. So you are held in contempt of court.
>
> You're in the custody of the sheriff until I decide what to do.  You are not to speak to witnesses.  You are not to speak to her at this point in time.  We are still under this Court's subpoena and under this Court's rule.  That was inappropriate.  I understand why you may have done it, but that was inappropriate.

---

[1] We use a pseudonym instead of the child's real name.  As Quintana does not challenge the sufficiency or weight of the evidence, we will not recount the circumstances giving rise to the indictment.

¶7.     The trial court then took up the parties' outstanding motions.  The State began to argue a motion to suppress evidence when defense counsel interjected with a motion for mistrial:

> [Defense]:  Your Honor, I have a motion to make if I can before we get started.
>
> [Judge]:    Go ahead.
>
> [Defense]:  Your Honor, based on the admonitions of the Court as to the persons in the courtroom, the Defense would move for a mistrial.  If the Court was concerned about a witness being coached from the audience, then that would be a grounds for mistrial based on that witness's testimony.  The minor was testifying, and apparently some relative or friend of the family was out there gesticulating of some sort to the witness.  And we would move for a mistrial.

¶8.     The State opposed the motion.  The trial court ruled that:

> Based on what the Court saw within the courtroom, I will deny the motion for a mistrial.  It did appear that persons within the audience were giving some indication of support to the witness with I think some thumbs up, but it was in between questioning; it was not during questioning.  And then there was some applause that was given, again, after questioning.  And then [the] final incident was after the jury had been sent to the jury room, the person stood up; I told them to sit down, at which point, they said a curse word.  Motion is denied.

¶9.     Next, the trial court conducted a hearing over whether one of the spectators would be held in contempt, excusing the other due to youth.  The adult spectator, Jessica Pugh, described her relationship to Amy, stating "[t]hat is my second cousin technically[,]" but that she felt "[t]hat's like my niece."  Pugh expressed remorse for her actions, apologizing to the trial court "for disrespecting [it] in the courtroom," and explaining that the proceedings were "emotional."  She acknowledged that she had "give[n] thumbs up and okay signs to [Amy],"

and clapped after her testimony. The trial court found Pugh in contempt. She was ordered to be removed from the courtroom for the remainder of the trial and assessed a fine of $100.

¶10. After deliberation, the jury found Quintana guilty of sexual battery and gratification of lust. He was sentenced to serve 30 years for Count I and 15 years for Count II, to run consecutively, in the custody of the Mississippi Department of Corrections.

¶11. On appeal, Quintana now raises one issue: whether "[t]he Circuit Court erred by denying a mistrial after the State's key witness was coached by a family member during her testimony."

**STANDARD OF REVIEW**

¶12. We review a trial court's denial of a motion for a mistrial using an abuse of discretion standard. *McCarty v. State*, 247 So. 3d 260, 273 (¶45) (Miss. Ct. App. 2017). For the "grant [of] a motion for a mistrial is within the sound discretion of the trial court." *Chamblee v. State*, 426 So. 3d 352, 371 (¶56) (Miss. Ct. App. 2025) (quoting *Liddell v. State*, 361 So. 3d 152, 155 (¶17) (Miss. Ct. App. 2023)). However, "each case must stand on its own facts in order to determine whether a particular decision constitutes reversible error." *Ford v. State*, 206 So. 3d 486, 491 (¶14) (Miss. 2016).

**DISCUSSION**

¶13. Quintana argues that "[t]he trial court abused its discretion in denying the motion for mistrial." He asserts that "the coaching [of Amy] by Pugh violated [his] right to a fair and impartial trial in front of an impartial jury." Specifically, that Amy's "demeanor during testimony and her ability to withstand cross-examination inevitably influenced the jury to

4

whether and to what extent she should be believed."

¶14.   Rule 23.5 of the Mississippi Rules of Criminal Procedure specifically provides that:

> [u]pon motion of any party, the court **may** declare a mistrial **if** there occurs during the trial, either inside or outside the courtroom, misconduct by a party, a party's attorney(s), or someone acting at the behest of a party or a party's attorney(s), **resulting in substantial and irreparable prejudice** to the movant's case.

*Id.* (emphasis added).

¶15.   We rejected the same argument raised by Quintana in a case last year based on somewhat similar facts.  A defendant was facing trial for the gratification of lust of his 12-year-old stepdaughter.  *Chamblee*, 426 So. 3d at 356 (¶¶1, 3).  During trial, the victim's grandfather gave her a "thumbs up" sign. *Id.* at 371 (¶59).  On appeal, the defendant claimed he should have received a mistrial, but as in this case, "the State argue[d] that even if the grandfather was impermissibly coaching the child, the court was correct in finding no prejudice to [the defendant] because the gesture had not been seen by the jury, and there was no evidence that it impacted the child's testimony[.]" *Id.* at (¶58).

¶16.   We unanimously agreed with the State's position, finding that "[a]lthough [the victim's] grandfather may have encouraged her, the jury may not have believed the child because it found [the defendant] not guilty on the count that involved her." *Id.* at 372 (¶60). Since the defendant "has not proved the serious and irreparable damage from the grandfather's conduct as required by Mississippi Rule of Criminal Procedure 23.5 to warrant a mistrial," we affirmed. *Id.*

¶17.   Just as the defendant in *Chamblee*, as his main authority Joshua cites a case from

5

Kentucky, *Sharp v. Commonwealth*, 849 S.W.2d 542 (Ky. 1993). In *Sharp*, a family friend made signals and gestures to a child-witness actively testifying on the stand. *Id.* at 546. A "bystander who observed [the family friend's conduct] was convinced that the gestures told the child whether to answer yes or no to the questions asked and whether she approved of the child's answers." *Id.* Additionally, the family friend admitted to disclosing the child's testimony to one or more sequestered witnesses subject to recall. *Id.* at 547.

¶18. On appeal, the Kentucky Supreme Court opined that "at face value, the witness received encouragement, approval and comfort at the time her credibility was being assessed by the jury." *Id.* The Kentucky high court determined that a mistrial was warranted because "the violations [were] so egregious and inimical to the concept of a fair trial that they cannot be disregarded in the name of trial court discretion." *Id.*

¶19. Joshua also cites to another out-of-state case to advance his argument. *State v. Smith*, 679 S.E.2d 176 (S.C. 2009). In *Smith*, the South Carolina Supreme Court determined the aunt of a minor who was on the stand had "used body language and other non-verbal signals in the courtroom during Doe's testimony and . . . directed at Doe" which "may have overridden Doe's free will[.]" *Id.* at 179. As a result, the South Carolina high court held that the aunt's "behavior and the potential for corruption of Doe's testimony clearly denied [the defendant] a fair trial." *Id.*

¶20. Of course *Sharp* and *Smith* are from outside our jurisdiction, and therefore not binding on this Court. More importantly, the facts in those cases are much more extreme than the relatively minimal interruptions in the trial below.

6

¶21. Notably, it appears that no one in the courtroom, save the trial court, perceived the gestures of the two audience members. The actions by the two spectators were so minimal that no contemporaneous objection was raised by the defense when the disruption occurred. Instead, the trial court *sua sponte* made a record of what occurred, which defense counsel then referenced when seeking a mistrial.

¶22. Further, the trial court did not find the "thumbs up" gesture to be coaching, as is urged by Quintana. Rather, it was seen as simple "encouragement" as we also found in *Chamblee*. Indeed, the gesture could not have been coaching as it occurred *after* each side finished their questioning. As the trial court explained, the gesture "was in between questioning; it was not during questioning." Likewise, the spectators clapped for the victim not during her testimony, but afterwards. As the trial court recalled, "there was some applause that was given, again, after questioning." Conversely, in both the Kentucky and South Carolina cases of *Sharp* and *Smith*, the child-witnesses were being actively coached by onlookers *during* their testimony.

¶23. While the two spectators provided non-verbal and verbal support to Amy after her questioning, the trial court took swift curative action and admonished them to halt their actions. This action safeguarded the integrity of the trial. And, as previously stated, it appears that the gestures were so minimal that only the trial court perceived them.

¶24. In the end, there was simply no evidence that Amy's testimony was "coached" or that the gestures swayed the jury's belief as to her credibility. *See McCarty*, 247 So. 3d at 273 (¶45) (holding that "[t]here was no legal or evidentiary basis for a mistrial" because the

appellant "presented no evidence that [the witness'] testimony was 'coached'"). Without any proof of such misconduct, we cannot say the trial court abused its discretion in denying the mistrial. For "[a] high degree of necessity must be found before a mistrial is appropriate." *Montgomery v. State*, 253 So. 3d 305, 321 (¶63) (Miss. 2018). That did not occur in this trial. As a result, we find no error.

## CONCLUSION

¶25.    We find the trial court did not abuse its discretion in denying a mistrial after it noticed two spectators gesturing to a witness after questioning. Accordingly, we affirm the judgment of conviction and sentencing.

¶26.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**