# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0202-MR

JASON ALEXANDER REUSSER                                     APPELLANT


V.                     ON APPEAL FROM CASEY CIRCUIT COURT
HONORABLE JUDY VANCE-MURPHY, JUDGE
NO. 19-CR-00071


COMMONWEALTH OF KENTUCKY                               APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Jason Alexander Reusser was convicted following a jury trial in Casey Circuit Court of twenty-seven sexual felonies and two counts of intimidating a participant in the legal process. Reusser perpetrated these crimes against four of his minor adopted children, all of whom were under the age of twelve at the time the felonious activities occurred. While the jury recommended consecutive sentences totaling 865 years imprisonment, the trial court imposed a sentence of seventy years to comply with KRS[1] 532.110. Reusser now appeals as a matter of right[2] raising five allegations of error. Following a careful review, we affirm.

---

[1] Kentucky Revised Statutes.

[2] Ky. Const. §110(2)(b).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Reusser was first indicted in 2012 for offenses against three of his adopted minor children. After a mistrial was declared for a discovery violation and a second trial ended with a hung jury, the Commonwealth brought a superseding indictment in 2019 adding a fourth victim, another of his minor adopted children. A six-day jury trial ensued following which he was convicted on all counts. While a detailed recitation of the facts is unnecessary for our analysis, a brief history is warranted for context and is gleaned from the testimony presented at Reusser's third trial.

Reusser and his wife, Michelle, had a total of nine children, both biological and adoptive. The family lived in a mobile home in Casey County, Kentucky, where Michelle home schooled the children and they farmed the land near their home. It was at this location where the charged physical abuse and sexual acts occurred.

In approximately 2006, Michelle's then nine-year-old biological daughter, M.R., awoke to find her shorts pulled down and Reusser touching her. He subsequently inserted his penis into her vagina. On at least four other occasions, Reusser placed M.R. on top of him and penetrated her with his penis. The acts stopped when M.R. began menstruating.

H.R. was seven or eight years old when he and Reusser were showering together. When instructed to rinse off, H.R. turned to face the showerhead when he felt a sharp pain in his "hind end" and Reusser moving back and forth behind him.

2

E.R., then aged eleven, was watching television with Reusser on the couch. Reusser removed his pants and E.R.'s panties before lifting her nightgown and penetrating her with his penis. Over E.R.'s cries and protestations, Reusser told her to "hold on a minute" and continued forcing himself inside her. On another occasion, Reusser directed E.R. to go to his bedroom where he undressed and forced E.R.'s head to his penis. He moved her head back and forth while his penis was in her mouth. One evening, upon catching E.R. eating after dinnertime, Reusser became enraged and slammed her head into a kitchen counter causing an injury and permanent scarring.

When J.R. was ten years old, Reusser laid her on his bed and penetrated her with his penis causing her to bleed. He told her the first time someone has sex it can result in bleeding and tearing and directed her to put on a feminine hygiene pad. Later, Reusser presented J.R. with a garter belt and stockings, showed her how to put them on, then ordered her to get down "on all fours." He then penetrated her from behind. On a different occasion, Reusser instructed J.R. to bend over a chair while they were in a hunting shack on the property and again penetrated her from behind. Reusser attempted to burn the condom he wore but was unsuccessful. On yet another occasion in a bus parked on the property, Reusser forced J.R. to perform oral sex on him and he performed oral sex on her. Reusser penetrated J.R. near a creek on the property and routinely had sex with her in a barn or shed on the property.

None of these incidents were reported until January of 2012 when M.R. told Michelle about the acts perpetrated against her. Michelle immediately

contacted authorities and the Casey County Sheriff's Office began an investigation. Two social workers and a deputy sheriff went to the Reusser property. J.R. and E.R. were warned repeatedly by Reusser during the visit to deny any allegations of his wrongdoing and not to say anything. He told J.R. she did not need to be responsible for "tearing the family apart." A search of the property revealed a box of condoms in Reusser's toolbox, a partially burned condom wrapper outside the hunting shack, and a garter belt and two pairs of stockings under the dashboard of the bus. Reusser had previously told the deputy he did not have any condoms because he and Michelle did not use contraceptives. Forensic testing of the garter belt and stockings revealed the presence of DNA from J.R. and Reusser.

Reusser was charged with multiple offenses for acts perpetrated against M.R., J.R., and E.R. The case proceeded to trial in July 2014 but a mistrial was declared on the first day. A second mistrial was declared following the jury's inability to reach a unanimous verdict in a trial convened in February 2016. In a superseding indictment adding H.R. as a victim, Reusser was subsequently charged with ten counts of rape in the first degree of a child under 12, four counts of rape in the second degree of a child under 14, three counts of rape in the third degree of a child under 16, two counts of sodomy in the first degree of a child under 12, two counts of sodomy in the second degree of a child under 14, four counts of incest involving a child under 12, two counts of intimidating a participant in the legal process, and one count each of incest involving a child under 14 and criminal abuse in the first degree of a

4

child under 12.  Following a third trial, the jury convicted Reusser of twenty-eight of the twenty-nine charged offenses[3] and he was sentenced to seventy years' imprisonment.  This appeal followed.

Reusser presents five allegations of error in seeking reversal of his convictions.  First, Reusser asserts he was unduly prejudiced by the admission of hearsay testimony from two healthcare providers who examined J.R., M.R., and E.R., which included statements from the children specifically identifying him as the perpetrator of the sexual abuse.  Next, he contends the trial court erred in failing to admonish the jury of J.R.'s status as a convicted felon.  Third, Reusser claims he was entitled to a directed verdict on the two counts of intimidating a participant in the legal process and the trial court erred in failing to grant his motion for same.  Fourth, he argues the trial court erroneously concluded an unwaivable conflict of interest existed with Reusser's counsel of choice and subsequently barring counsel from representing him.  Finally, Reusser asserts the trial court erred in excluding testimony from his proposed expert witness.

## II.  ANALYSIS

**A.  Physician testimony identifying Reusser as the perpetrator was error, but reversal is not required.**

---

[3]  Before the case was submitted to the jury, the parties agreed a directed verdict was appropriate as to one of the counts of rape in the first degree.  The jury was instructed on the remaining counts.

Reusser first contends he was substantially prejudiced by the testimony of Dr. Stephanie Jones, a family physician, and Dr. Tara Horn, an obstetrician/gynecologist, that during their examinations J.R. and E.R. had identified Reusser as the perpetrator. His claim is unpreserved. While Reusser objected to the testimony of Drs. Jones and Horn, he did not do so for the reasons now advanced. Before trial he generally objected to "any statements the children may have made" to Dr. Jones. The motion made no mention of the grounds on which he now relies. At trial, Reusser objected to the doctors providing testimony about any history taken from the children, referencing "Child Abuse Accommodation Syndrome," or repeating any prior consistent statements made by the children. The trial court was never presented with the grounds presently asserted as error. Reusser requests palpable error review under RCr[4] 10.26. "In order to demonstrate an error rises to the level of a palpable error, the party claiming palpable error must show a 'probability of a different result or [an] error so fundamental as to threaten a defendant's entitlement to due process of law.'" *Allen v. Commonwealth*, 286 S.W.3d 221, 226 (Ky. 2009) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)).

J.R., M.R., and E.R. were examined at the Children's Advocacy Center. Dr. Horn examined E.R., while Dr. Jones performed the examinations of the other two. Oral histories were given by each child during the sessions. H.R. was not examined by either physician. At trial, Dr. Jones testified J.R. stated

---

[4] Kentucky Rules of Criminal Procedure.

during the oral history that "my dad abused me and had sex with me" and he would "touch all over her and penetrate her with his penis." M.R. did not disclose any sexual abuse to Dr. Jones but did indicate she was fearful of her father. Dr. Horn testified E.R. said "her father had touched her private area with his penis when she was about nine years old and when he had started doing that it was painful, but eventually she had gotten used to it and it didn't hurt anymore." It is these hearsay statements which Reusser contends tainted his trial and warrant reversal.

KRE 803(4) provides out-of-court statements "made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis" are not excluded by the hearsay rule. The underlying reason for this hearsay exception "is the patient's desire for treatment, not the doctor's duty to treat, that gives credibility to the patient's out-of-court statement." *Colvard v. Commonwealth*, 309 S.W.3d 239, 245 (Ky. 2010). "Generally, in a child sex abuse case, only those statements that relate to the patient's physical injuries and what caused them are pertinent to treatment and diagnosis under KRE 803(4)." *Hoff v. Commonwealth*, 394 S.W.3d 368, 374 (Ky. 2011). "[T]he general rule is that the identity of the perpetrator is not relevant to treatment or diagnosis." *Colvard*, 309 S.W.3d at 244 (citation omitted). It is well-recognized this kind of hearsay testimony is significantly

prejudicial when repeated by a professional. *See Sharp v. Commonwealth*, 849 S.W.2d 542, 545 (Ky. 1993).

The Commonwealth concedes Drs. Jones and Horn should not have identified Reusser as the perpetrator in their respective testimonies but contends the evidence of guilt was overwhelming and any resulting error from the physicians' testimony therefore did not cause Reusser to suffer a manifest injustice which would require reversal.

There can be no doubt it was error for the trial court to permit Drs. Jones and Horn to identify Reusser as the perpetrator as such information was clearly unnecessary for a medical purpose of diagnosis or treatment of any of the children. However, we agree with the Commonwealth that a palpable error did not occur. The evidence against Reusser was overwhelming, each child recounted specific acts and identified Reusser as the assailant, and physical and DNA evidence tied Reusser to several of the crimes and corroborated the testimony of the children. The brief statements by the physicians were cumulative of J.R. and E.R.'s testimony. The offending testimony had no bearing on any charges related to H.R. or M.R. nor on the majority of the charges levied against Reusser for acts committed against J.R. and E.R. Although the doctors' testimony may have resulted in some prejudice to Reusser, that prejudice was not of the egregious nature which shocks the conscience as is required to find a palpable error. *See Hoff v. Commonwealth*, 394 S.W.3d 368, 370 (Ky. 2011). Thus, reversal is not required.

8

**B.  Failure to admonish the jury regarding J.R.'s status as a convicted felon was not reversible error.**

On direct examination, J.R. admitted she had previously been convicted of a felony.  Reusser requested the trial court admonish the jury that information regarding the felony conviction could only be used to evaluate J.R.'s credibility and for no other purpose.  The Commonwealth did not oppose the request but asked that the admonition be given at a different time.  The trial court did not believe an admonition was required but informed counsel it would "give it if it is addressed later."  No further request ensued and Reusser did not raise the issue again.  He now claims the failure to admonish the jury constituted reversible error.  Acknowledging he failed to properly preserve the issue for appeal, Reusser seeks palpable error review.

KRE[5] 609 permits impeachment by inquiring whether a witness is a convicted felon.  "If his answer is 'Yes,' that is the end of it and the court shall thereupon admonish the jury that the admission by the witness of his prior conviction of a felony may be considered only as it affects his credibility as a witness, if it does so."  *Commonwealth v. Richardson*, 674 S.W.2d 515, 517-18 (Ky. 1984).  What appears to be a mandatory task for trial courts was later clarified in *Allen v. Commonwealth*, where this Court held "[t]he trial court is always empowered to prevent misuse of [KRE 608 and 609] when necessary, possibly by separating the inquiries, clearly showing what is being asked

---

[5]  Kentucky Rules of Evidence.

9

about, or, *if necessary*, instructing the jury how it may consider the evidence. This is not an uncommon task for trial courts and counsel." 395 S.W.3d 451, 466 (Ky. 2013) (emphasis added).

Without any specificity, Reusser baldly asserts his defense was unfairly prejudiced by the trial court's failure to admonish the jury. However, we perceive no danger the evidence of J.R.'s status as a convicted felon would be considered by the jury for any other purpose than reflecting on her credibility as a witness. The prejudice, if any, would appear to be against the Commonwealth and not to Reusser. Thus, this minor procedural error, if it was in fact an error, did not affect Reusser's substantial rights and we cannot say it swayed the outcome of the trial. Reusser is not entitled to the relief he seeks.

**C. Sufficient evidence supported the convictions of intimidating a participant in the legal process.**

Reusser was charged with and convicted of intimidating a participant in the legal process related to E.R. and J.R. He asserts the Commonwealth failed to present sufficient evidence of a "physical force or a threat" as required under KRS 524.040(1) to support his convictions. Reusser requests palpable error review of this unpreserved issue.

KRS 524.040 states, in pertinent part:

(1) A person is guilty of intimidating a participant in the legal process when, by use of physical force or a threat directed to a person he believes to be a participant in the legal process, he or she:
. . . .

10

> (f) Hinders, delays, or prevents the communication to a law enforcement officer or judge of information relating to the possible commission of an offense or a violation of conditions of probation, parole or release pending judicial proceedings.

A "threat" is defined in KRS 524.010(8) as "any direct threat to kill or injure a person protected by this chapter or an immediate family member of such a person."

Reusser argues his actions in warning E.R. and J.R. to not speak with investigators did not rise to the statutory definition of a "threat" as neither child indicated Reusser threatened force or violence during the interactions. His position plainly ignores the years of his chronic and continual physical and sexual abuse of the children and their understanding of what would happen should they disobey his directions. M.R. testified directly about Reusser's violent tendencies. E.R. informed the jury about a specific incident where Reusser slammed her head into a countertop when he was angry at her for eating after suppertime. Michelle also testified about Reusser's angry outbursts and the violence which would ensue from them. Clearly, the children were aware of the violent consequences which would befall them without Reusser having to verbalize them on each and every occasion. Under the circumstances, the evidence presented supported Reusser's convictions for intimidating a participant in the legal process. There was no manifest injustice and no palpable error.

**D. A conflict of interest existed sufficient to support disqualification of counsel.**

11

Following her divorce from Reusser, in 2017 Michelle consulted and formed an attorney-client relationship with Hon. Ephraim Helton regarding matters related to the divorce. During their meetings, Michelle discussed Reusser's pending charges, the Commonwealth's trial strategy, and errors in earlier trials Michelle believed the Commonwealth had made which kept Reusser from being convicted. Later, following issuance of the superseding indictment, the Commonwealth learned Helton intended to enter an appearance for Reusser and, discerning a potential conflict of interest existed, informed Reusser and the trial court of the issue. Following an *ex parte* hearing the Commonwealth submitted a detailed motion seeking disqualification. Reusser responded in opposition, the Commonwealth filed a reply, and Reusser submitted a second response. Taking into consideration all information provided to it, the trial court concluded an actual conflict of interest existed and disqualified Helton from further representation. Reusser now contends the trial court's decision was erroneous.

> Disqualification of counsel is a "drastic measure" that "courts should be hesitant to impose except when absolutely necessary. Disqualification separates a party from the counsel of its choice with immediate and measurable effect." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001) (citing *University of Louisville v. Shake*, 5 S.W.3d 107 (Ky. 1999)). A party seeking disqualification of opposing counsel must "show an actual conflict, not just a vague and possibly deceiving appearance of impropriety. And that conflict should be established with facts, not just vague assertions of discomfort with the representation." *Marcum* [*v. Scorsone*], 457 S.W.3d [710,] 718 [(Ky. 2015)].

*Harkins v. House*, ___ S.W.3d ___, Nos.2019-SC-0216-MR, 2019-SC-0244-MR-2019-SC-0217-MR, 2021 WL 4486503, at *5 (Ky. Sept. 30, 2021), *reh'g denied*

12

(Jan. 20, 2022). We review a trial court's ruling on disqualification of an attorney for an abuse of discretion. *Turner v. Commonwealth*, 544 S.W.3d 610, 622 (Ky. 2018). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted).

> SCR[6] 3.130(1.9)(a) provides:
>
> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Reusser asserts his criminal trial was not the same or substantially related matter to the divorce issues for which Michelle consulted Helton. Reusser also believes his interests were not materially adverse to Michelle's. Further, he argues Helton had no independent recollection of his brief representation of Michelle and had received a favorable opinion from the Kentucky Bar Association's ethics hotline approving the subsequent representation. Therefore, Reusser contends the trial court erred in concluding a conflict of interest existed. We disagree.

Reusser does not dispute an attorney-client relationship existed between Helton and Michelle. During consultations, Michelle disclosed information regarding the abuse of her children perpetrated by Reusser and the criminal

---

[6] Rules of the Supreme Court.

charges resulting from that same abuse. In *Turner*, this Court was presented with an analogous situation and discerned no abuse of discretion in the trial court's disqualification order.

> The trial court with the benefit of a detailed hearing, including *ex parte* proceedings to assess the parties' intended trial strategies, determined that there was a sufficient likelihood of an ethical conflict. Due to his prior representation of Pomeroy, the murder victim, in [a] domestic violence assault case where Turner, his current client, was the victim, Holland was potentially aware of information which could have become relevant at trial. If during trial Holland recalled information obtained during his representation of Pomeroy that would be relevant in his representation of Turner, he would face a serious dilemma about how to best protect the interests of both Pomeroy and Turner. The trial court with the benefit of detailed information from counsel, was deeply concerned that this circumstance could indeed come to pass.

544 S.W.3d at 622. The same potential for serious conflict existed under the fact presented here. Michelle, as the former client, did not give informed consent, confirmed in writing, to Helton's subsequent representation of Reusser in the criminal trial. Absent such consent, and in the face of an obvious conflict, the trial court correctly disqualified Helton. There was no error.

**E. Reusser's proposed expert witness was not qualified to testify.**

In 2015, Reusser took a video deposition of Dr. Mark Ackerman, a practicing obstetrician/gynecologist. His testimony was admitted at the 2016 trial. Dr. Ackerman opined a female's hymen will always tear in multiple places upon penetration during their first episode of sexual intercourse and such tearing will forever be visible upon vaginal inspection. Reusser sought to introduce the same video deposition at the instant trial. The Commonwealth

14

sought to prohibit the admission of Dr. Ackerman's testimony based on his lack of credentials regarding child sexual assault or forensic sexual assault examinations. Following extensive arguments, the trial court concluded Dr. Ackerman could not qualify as an expert on the subject matters at issue in Reusser's trial. Reusser asserts this decision was erroneous.

A trial court's decision excluding expert testimony is reviewed for an abuse of discretion. *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 39 (Ky. 2004). Trial courts possess broad discretion in exercising the gatekeeping function required under KRE 702 and appellate courts give great deference to trial court rulings related to expert testimony, reversing only when an abuse of discretion is clear. *Id.*

KRE 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
(1) The testimony is based upon sufficient facts or data;
(2) The testimony is the product of reliable principles and methods; and
(3) The witness has applied the principles and methods reliably to the facts of the case.

Our review of the record reveals Dr. Ackerman's proposed testimony did not satisfy the requirements of KRE 702. He had no training in child sexual abuse or forensic sexual assault examinations aside from minimal exposure while in medical school over two decades prior to trial. Dr. Ackerman admitted to being unfamiliar with significant medical articles, research, and studies related to the hymen in children who had been subjected to sexual abuse. His

15

proffered opinions were directly contrary to known, longstanding medical research which was referenced by this Court as far back as 1997 in *Collins v. Commonwealth*, 951 S.W.2d 569, 574 (Ky. 1997) (highly-qualified doctor testified approximately fifty percent of sexually active women retain an intact hymen). Thus, his qualification as an expert in this instance is highly suspect.

Further, the legal definition of sexual intercourse does not require a finding of penetration significant enough to reach and tear the hymen, but rather specifies sexual intercourse is accomplished by penetration "however slight." *See* KRS 510.010(8). Thus, Dr. Ackerman's testimony would not have assisted the jury "to understand the evidence or determine a fact in issue" as required by KRE 702. Under these circumstances, we cannot say the trial court abused its discretion in finding Dr. Ackerman was unqualified as an expert and excluding his testimony.

### III. CONCLUSION

For the foregoing reasons, the judgment and sentence of the Casey Circuit Court is affirmed.

All sitting. All concur.

16

COUNSEL FOR APPELLANT:

Adam Meyer
Assistant Public Advocate

Molly Mattingly
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General