OPINION OF THE COURT BY JUSTICE WRIGHT
*578 A Muhlenberg County Grand Jury indicted Appellant, Jesse Leroy Graham, on eight counts of first-degree sodomy and four counts of first-degree sexual abuse. These counts concerned four minor children, all of whom were under twelve years of age-two counts of sodomy and one count of sexual abuse related to each of the children. The trial court severed the allegations contained in counts 1-6 from those in counts 7-12 based on the location of the alleged abuse. A jury trial was held concerning counts 7-12, which resulted in a Muhlenberg Circuit Court jury finding Appellant guilty of all six counts (four counts of first-degree sodomy and two counts of first-degree sexual abuse). Following the jury verdict, Appellant entered an Alford plea as to the severed counts. The trial court accepted the plea and sentenced Appellant to thirty years' imprisonment.
Appellant now appeals as a matter of right, Ky. Const. § 110 (2)(b), alleging that: (1) the trial court abused its discretion in its admission of improper evidence pursuant to Kentucky Rules of Evidence (KRE) 404(b) ; (2) the trial court abused its discretion in denying Appellant's motion for mistrial; and (3) the Commonwealth improperly questioned Appellant, amounting to a violation of Moss v. Commonwealth, 949 S.W.2d 579 (Ky. 1997). For the following reasons, we affirm the trial court.
I. BACKGROUND
Appellant was the director of SOS Ministries of Muhlenberg County during all times relevant to this case. The ministry provided food and transportation to doctors' appointments and mowed yards for Muhlenberg County residents in need. After Appellant divorced his then-wife in 2015, he moved in with his son, Logan and Logan's family. Logan said his father was involved with young boys and would take them on fishing trips.
Joseph,[1] Appellant's great nephew, was one of the boys with whom Appellant became involved. Joseph has Asperger's syndrome and borderline Oppositional Defiant Disorder. Appellant had taken Joseph on some fishing trips in the past, but, in 2015, Joseph also began spending the night with Appellant at Logan's house. Joseph said he and Appellant would play computer games and watch YouTube. Joseph said that one night, he asked Appellant if he could stay up later than his normal bedtime, and Appellant said he could if Joseph would let him "suck [his] peepee." Joseph said he did so and Appellant let him stay up an additional hour.
On another occasion, Joseph said that Appellant bet he could make Joseph lose the computer game he was playing. When they made the bet, Appellant got under the desk, pulled Joseph's pants down and put his mouth on Joseph's penis. Joseph also testified that he would sometimes wet the bed and that Appellant would hold his penis, telling Joseph it would help him not wet the bed.
Joseph's mother, Sandra, was contacted by a social worker concerning sexual abuse allegations. The social worker told Sandra that Joseph's name repeatedly came up in *579 interviews with other boys regarding Appellant. Sandra agreed for Joseph to speak with the social worker. He initially denied that anything had happened, but later went to his mother and admitted he was a victim of Appellant's abuse.
Another child, Lonnie, moved to Muhlenberg County in late 2015 with his mother, Martha. Martha was concerned about being able to buy Lonnie Christmas gifts and reached out to Appellant for help after seeing his Facebook posts regarding his ministry work. Appellant came to Martha's home with some gifts for Lonnie and agreed to help her. At some point, Appellant gave Lonnie a guitar his son, Logan, donated. Appellant began visiting Lonnie weekly (once or twice accompanied by Joseph) and eventually proceeded directly to Lonnie's bedroom after greeting Martha. Appellant took Lonnie fishing and hiking and sometimes took him on trips to distribute food for the ministry.
When Appellant visited Lonnie at home, Appellant would sit with Lonnie on his bed and watch Lonnie play video games. Lonnie said the first time Appellant touched him inappropriately, he was sitting on the bed playing a video game and Appellant said, "I bet I can make you lose." Appellant then stuck his hand down Lonnie's pants, inside his underwear. Lonnie said this was not an isolated incident. On another occasion, Lonnie said Appellant licked his "privates." Then, at a different time, Lonnie testified Appellant forced the child's head to his exposed "privates." Lonnie said he did not wish to do so, but that Appellant threatened to take the guitar back if Lonnie did not acquiesce.
Lonnie said he did not initially tell his mother because he was scared, but did eventually tell his school counselor. When Martha asked her son about the abuse, he initially became agitated and said nothing had happened. When school personnel asked Lonnie what happened, he likewise initially denied anything. However, he then admitted to the sexual abuse.
In addition to the six counts related to Joseph and Lonnie (two counts of sodomy and one count of sexual abuse related to each), Appellant was also indicted for the same counts regarding two additional victims. These acts of abuse occurred during fishing trips. Prior to trial, Appellant moved for the crimes relating to each of the four victims to be severed from the others. The trial court granted Appellant's motion in part, severing the counts related to Joseph and Lonnie from those concerning the other two boys based upon the location of the acts.
As noted above, the counts regarding Joseph and Lonnie were tried. When Appellant was convicted of all counts, he entered an Alford plea as to the remaining six counts of the indictment. This appeal followed.
II. ANALYSIS
A. KRE 404(b)
Appellant alleges that the trial court erred when it overruled his objection concerning the Commonwealth's introduction of what he alleges was evidence of the severed charges-amounting to a KRE 404(b) violation. That rule provides, in pertinent part: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."
On appeal, "[w]e will not disturb a trial court's decision to admit evidence absent an abuse of discretion." Matthews v. Commonwealth, 163 S.W.3d 11, 19 (Ky. 2005) (citing Partin v. Commonwealth, 918 S.W.2d 219, 222 (Ky. 1996) ). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal *580 principles." Commonwealth v. English, 993 S.W.2d 941, 945 (Ky. 1999). Applying this test to the case at bar, we will not overturn the trial court's decision, as the trial court did not abuse its discretion in admitting the evidence.
1. Fishing Trips
Appellant first alleges that the trial court erroneously admitted evidence regarding fishing trips. Specifically, he argues Logan's response to the Commonwealth's question about whether he knew Appellant was taking young boys on fishing trips was inadmissible 404(b) evidence of prior bad acts. Appellant objected at trial because the counts concerning Joseph and Lonnie did not occur on these fishing trips-only the severed counts regarding Appellant's remaining two victims. The trial court overruled the objection.
Appellant insists this evidence was irrelevant to the charges that he had sodomized and sexually abused Joseph and Lonnie in bedrooms. He argues that questioning Logan about Appellant taking the boys on fishing trips was only to show his criminal disposition and was unduly prejudicial.
However, there is nothing inherently wrong about taking underprivileged children on fishing trips. It does not amount to evidence of other crimes, wrongs, or acts as contemplated by KRE 404(b). This evidence was not presented to "prove the character of [Appellant] in order to show action in conformity therewith." KRE 404(b). It was not presented to prove that Appellant's character was that of a man who takes children fishing in order to prove that he took Joseph and Lonnie fishing. While it is true that Appellant was accused of sexually abusing other young boys on fishing trips, no testimony or evidence of those acts of abuse was presented; nor was an allegation that he had abused these or other boys while on fishing trips.
Evidence Appellant took Joseph and Lonnie fishing was admitted throughout trial. Both Joseph and Lonnie testified that Appellant took them fishing-as did their mothers. Appellant also testified that he had taken them on fishing trips. Logan's testimony that Appellant would tell him he was taking a fishing trip "with this kid, or another child" was likely assumed by the jury to indicate the trips alluded to in other testimony of Appellant's fishing trips with Joseph and Lonnie. This was certainly not the admission of evidence of the severed charges, as Appellant argues. Even if the jury assumed Logan referred to Appellant taking other boys fishing, lacking any testimony regarding Appellant's abuse of those children during the trips, it was simply not evidence of other crimes, wrongs, or acts covered by KRE 404(b).
2. Marcus
Appellant next claims the trial court erroneously allowed the admission of evidence of other crimes concerning Marcus, one of the two victims in the severed counts.
a. Joseph's unresponsive answer mentioning Marcus
Appellant argues "Joseph said that after his mother saw a Facebook post about [Appellant] allegedly sodomizing and sexually abusing his 'friend Marcus,' she asked whether [Appellant] had ever done anything to him." However, Joseph did not actually reference the content of the Facebook post. Rather, when the Commonwealth asked Joseph if he remembered where he was when his mother asked if Appellant had abused him, Joseph responded that it was "after she saw a post about-about my friend Marcus."
*581 Appellant immediately objected and Joseph said nothing else related to the other victim. Joseph's statements did not indicate that Marcus had been a victim of sexual abuse, nor that Appellant perpetrated said abuse. While, in fact, the actual post may have included such allegations of abuse, the content of the post was not presented to the jury.
Again, this testimony did not amount to KRE 404(b) evidence of other crimes, wrongs or acts. The statement referred neither to Appellant, nor amounted to evidence of his character in an attempt to show that he acted in conformity therewith.
Joseph's answer about a post (presumably a post on social media) concerning Marcus was unresponsive to the Commonwealth's question: "Where were you when she asked you, do you remember?" The Commonwealth had no way to know that Joseph would respond to its question in such a manner. Even if this were to amount to evidence of other crimes,
There is no indication that the prosecutor deliberately elicited ... the statement[ ] from th[is] witness[ ]. Where, as here, evidence of other crimes is introduced into evidence through the non-responsive answer of a witness, this Court must look at all of the evidence and determine whether the defendant has been unduly prejudiced by that isolated statement.
Epperson v. Commonwealth, 197 S.W.3d 46, 54 (Ky. 2006). Joseph's nonresponsive comment about a post his mother saw concerning Marcus neither alluded to a crime nor linked such crime to Appellant. Appellant was not unduly prejudiced by the statement.
Furthermore, the trial court offered to admonish the jury, but Appellant refused. We noted in Johnson v. Commonwealth, 105 S.W.3d 430, 441 (Ky. 2003), "[a] jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." We went on in that case to enumerate exceptions to that general rule:
There are only two circumstances in which the presumptive efficacy of an admonition falters: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition and there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant; or (2) when the question was asked without a factual basis and was "inflammatory" or "highly prejudicial."
Id. (internal citations omitted). Neither of those circumstances exists here. The evidence would not have been devastating to Appellant and the question was not asked without a factual basis. Therefore, even had Joseph's unresponsive answer amounted to an error, an admonition would have cured it.
b. Commonwealth's mention of Marcus when cross-examining Appellant
In Appellant's direct testimony, he stated that upon learning of the allegations against him, he drank a bottle of whiskey, passed out, and was later discovered with a firearm-though he denied being suicidal. Appellant said he was heartbroken, as he knew his reputation, ministry work, and career would be destroyed. On cross-examination, the Commonwealth impeached Appellant's statement regarding the reason for his distress with a prior inconsistent statement he had made to police. Specifically, the Commonwealth asked Appellant if he recalled telling the officer that he was distraught because he would not be able to see Marcus again. Defense counsel objected and moved for a mistrial. The trial court overruled the motion and found that Appellant had opened the door to the *582 question when he testified regarding the reason he got drunk and passed out with a firearm.
Just as with the previous testimony about Marcus, we note that no testimony was elicited here that Appellant had abused the child. Rather, here, the Commonwealth only elicited testimony regarding Appellant's statement to police that he was upset because he would not be able to see Marcus anymore. Regardless, Appellant argues this testimony was irrelevant, as it did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401.
The Commonwealth argues that questioning Appellant as to his prior inconsistent statement went to his credibility-not to suggest character evidence regarding other crimes, wrongs, or acts. KRE 611(b) provides: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." We have held, "[w]itness credibility is always at issue and relevant evidence which affects credibility should not be excluded." Commonwealth v. Maddox, 955 S.W.2d 718, 721 (Ky. 1997). Furthermore, "the trial court may not exclude evidence that impeaches credibility even though such testimony would be inadmissible to prove a substantive issue in the case." Sanborn v. Commonwealth, 754 S.W.2d 534, 545 (Ky. 1988).
We agree with the trial court that, by explaining why he drank the bottle of whiskey, Appellant opened the door to the Commonwealth's questions regarding the alternate reason he had given police (that he would no longer get to see Marcus). "Generally stated, 'opening the door' to otherwise inadmissible evidence is a form of waiver that happens when one party's use of inadmissible evidence justifies the opposing party's rebuttal of that evidence with equally inadmissible proof." Commonwealth v. Stone, 291 S.W.3d 696, 701-02 (Ky. 2009). Therefore, regardless of the irrelevance of the reasoning behind Appellant's drinking to the point of passing out with a firearm next to him, the fact that he provided the testimony opened the door the Commonwealth's rebuttal through his prior inconsistent statement to police.
Appellant argues yet again that this testimony was improper under KRE 404(b) as evidence of other crimes, wrongs, or acts. However, the Commonwealth did not ask Appellant whether he had sexually abused Marcus. It only inquired as to his statement to police that he was upset that he would not get to see Marcus anymore. Had the Commonwealth delved into the nature of Appellant's relationship with Marcus, it may have uncovered such KRE 404(b) evidence. However, simply mentioning Marcus's name in rebutting Appellant's testimony certainly does not rise to this level.
Because none of the evidence amounted to that of other crimes, wrongs, or acts, there is no need for this Court to analyze its admission under the test set forth in Bell v. Commonwealth, 875 S.W.2d 882, 889-90 (Ky. 1994), as Appellant contends.
B. Bystander Gesture to Witness
Appellant argues the trial court erred in failing to grant his motion for a mistrial after a bystander gestured to a witness. Lonnie was about ten minutes into his testimony when he asked for a break to use the bathroom. The court recessed to accommodate that request. On his way out of the courtroom, Appellant says "a woman who appeared to be a counselor gave Lonnie a thumbs up in full view of the jury."
Appellant argues that gesturing to a witness, particularly a child witness, is *583 highly prejudicial. Appellant relies on Sharp v. Commonwealth, 849 S.W.2d 542 (Ky. 1993), in which this Court said that gestures made to a child witness during that witness's testimony necessitated the granting of a mistrial. In that case, a bystander observed a family friend, Ms. Hess, make gestures to the witness while under oath on the witness stand. We noted:
The bystander who observed Ms. Hess was convinced that the gestures told the child whether to answer yes or no to the questions asked and whether she approved of the child's answers. Ms. Hess denied suggesting any answers to the child, but admitted that by gestures she sought to comfort and encourage the child during her testimony. She admitted to mouthing "You're doing fine" and admitted that she gave approving gestures by winks and a thumbs-up sign.
Id. at 546-47. Based on these interactions, this Court held:
The child victim on the witness stand was a crucial witness for the Commonwealth. Her demeanor during testimony and her ability to withstand cross-examination inevitably influenced the jury as to whether or to what extent she should be believed. Even taking Ms. Hess's version of what she did at face value, the witness received encouragement, approval and comfort at the time her credibility was being assessed by the jury. It would be impossible to say that the witness did not derive confidence and assurance from this positive reinforcement which influenced the jury to believe her.
Id. at 547.
Just as was the case in Sharp, Lonnie was a crucial witness for the Commonwealth. However, unlike that case, there is no assertion here that any improper gestures occurred while he was on the witness stand. In Sharp, a family friend admitted to attempting to comfort the witness during her testimony. As we held, these gestures during the witness's testimony could impact the witness's demeanor and affect the credibility the jury gave to the witness. Here, Lonnie was on his way out of the courtroom during a recess when a bystander made a single gesture-a thumbs up.
In an unpublished case, Banks v. Commonwealth, No. 2014-SC-000176-MR, 2015 WL 1544294, at *3 (Ky. Apr. 2, 2015), a detective was seen gesturing to the child victim during that child's testimony. The Appellant therein also relied on Sharp. However, this Court did not reverse the trial court's denial of mistrial in Banks, as "[h]ere, the improper interaction was far more limited in both scope and duration, and falls far short of the prejudicial conduct decried in Sharp . " The gestures in the case at bar are much more like those in Banks than in Sharp as they were of far lesser scope and duration in the case at bar. In fact, the interaction was even less so in this case than in Banks, as the gestures did not occur while Lonnie was on the witness stand.
The facts of Sharp were extreme. It was believed that a bystander was attempting to influence the child witness's testimony or, at the very least, to provide comfort and support to the child while that child's credibility was being assessed by the jury. Those are simply not the facts herein.
Furthermore, In Campbell v. Commonwealth, No. 2007-SC-000146-MR, 2009 WL 1830804, at *5 (Ky. June 25, 2009), this Court addressed whether it was improper for the Commonwealth's Attorney to speak to a child victim during an overnight recess regarding the victim's ability to continue his testimony. At trial the next day, both the witness "and the Commonwealth, under oath, verified there had been no coaching. Nonetheless, Appellant renewed *584 his objection to the conference between the complaining witness and the Commonwealth and requested either [the witness's] testimony be stricken or a mistrial declared." Id. at *6. Acknowledging that there was no Kentucky authority directly on point, we cited a plethora of decisions from other jurisdictions in reaching our holding that "it was within the trial court's discretion as to whether to allow the Commonwealth to confer with J.C. during the overnight recess and thus, there was no error." Id.
Here, it is not a matter of counsel conferring with a witness who has already taken the stand. Rather, this was a third-party. However, we find Campbell instructive. Just as it would not be erroneous for counsel to speak to the sworn witness in a manner that did not amount to coaching the witness, such interaction would not be impermissible of a third party outside the view of the jury. Here, however, the third party's "thumbs up" may have been in the view of the jurors. Such an interaction, if in sight of the jury, is unacceptable, as it may boost the credibility of the witness in the eyes of the jury. However, in the present case, the jury was not polled even to determine if they had viewed the gesture. Furthermore, Appellant rejected the offered admonition.
Appellant asks this Court to overturn the trial court's denial of his motion for a mistrial based on the aforementioned hand gesture. We decline to do So, as the trial court did not abuse its discretion. "A mistrial is an extreme remedy and should be resorted to only when there appears in the record a manifest necessity for such an action or an urgent or real necessity." Bray v. Commonwealth, 177 S.W.3d 741, 752 (Ky. 2005), overruled on other grounds by Padgett v. Commonwealth, 312 S.W.3d 336 (Ky. 2010). "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way." Gould v. Charlton Co., 929 S.W.2d 734, 738 (Ky. 1996). Furthermore, "[i]t is well established that the decision to grant a mistrial is within the trial court's discretion, and such a ruling will not be disturbed absent a showing of an abuse of that discretion." Woodard v. Commonwealth, 219 S.W.3d 723, 727 (Ky. 2007), overruled on other grounds by Commonwealth v. Prater, 324 S.W.3d 393 (Ky. 2010). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Commonwealth, v. English, 993 S.W.2d at 945.
While the gesture was not grounds for a mistrial in this case, we caution attorneys that it would be wise to warn any bystanders present in the courtroom for the support of witnesses that such interaction in view of the jury is improper. This may avoid a potential mistrial in the future.
C. Alleged Moss Violation
Finally, Appellant argues he was prejudiced by the Commonwealth's violation of Moss v. Commonwealth, 949 S.W.2d 579 (Ky. 1997). In that case, we quoted State v. James, 557 A.2d 471, 473 (R.I. 1989) in reaching our holding: "A witness's opinion about the truth of the testimony of another witness is not permitted. Neither expert nor lay witnesses may testify that another witness or a defendant is lying or faking. That determination is within the exclusive province of the jury." More recently, this Court has stated "it is generally improper for a witness to characterize the testimony of another witness as 'lying' or otherwise." Lanham v. Commonwealth, 171 S.W.3d 14, 23 (Ky. 2005).
During cross examination, the Appellant testified that the last time he had interacted *585 with Joseph and Lonnie, he had taken Joseph with him to Lonnie's mother's house to mow the lawn. According to Appellant, the boys became upset that he would not take them fishing, stomped into the house, went in Lonnie's bedroom and locked the door. The Commonwealth asked if it was Appellant's belief that Joseph and Lonnie getting together in Lonnie's room that day while angry was "why you're here today." Defense counsel objected. The Commonwealth explained during the ensuing bench conference that Appellant had implied the two boys conspired against him when in Lonnie's bedroom because they were angry with him. The trial court said, "I know. I understand." and overruled Appellant's objection. Appellant did not request an admonition. The Commonwealth continued its cross-examination of Appellant by asking whether the boys "concocted" the story while in Lonnie's room. Appellant stated he did not know why the charges were brought against him.
This exchange is a far cry from the testimony at issue in Moss, wherein the appellant "was asked and badgered into stating that [a police officer], a leading witness for the Commonwealth, was lying." Moss, 949 S.W.2d at 583. Here, neither Joseph nor Lonnie testified regarding the day to which Appellant alluded-nor any conversations they may have had "concocting" a story. He was not "badgered into stating ... a leading witness for the Commonwealth[ ] was lying." Id. Rather, it was clear that the version of events Appellant testified to stood in stark contrast with that to which Joseph and Lonnie testified.
The Commonwealth was attempting to clarify what seemed to be implied by Appellant's testimony-that he believed Joseph and Lonnie made up the story of abuse because they were angry with him. This does not rise to the level of the "blunt force" forbidden by Moss wherein we held:
A witness should not be required to characterize the testimony of another witness, particularly a well-respected police officer, as lying. Such a characterization places the witness in such an unflattering light as to potentially undermine his entire testimony. Counsel should be sufficiently articulate to show the jury where the testimony of the witnesses differ without resort to blunt force.
Id. Appellant was not asked to call Joseph and Lonnie liars, and was not placed in an unflattering light by the Commonwealth's insistence that he do so. He presented a motive for the boys to make up a story concerning abuse and the Commonwealth fleshed that out through a line of questions. At no point did the Commonwealth ask him to say that the boys' testimony was untruthful. Therefore, there was no Moss violation.
III. CONCLUSION
For the foregoing reasons, we affirm Appellant's conviction and sentence.
All sitting. All concur.

In keeping with this Court's practices, we use pseudonyms rather than minor victims' names.