RENDERED: AUGUST 24, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0068-MR

JASON BARRETT          APPELLANT

V.
         ON APPEAL FROM OHIO CIRCUIT COURT
         HONORABLE TIMOTHY R. COLEMAN, JUDGE
         NO. 19-CR-00001

COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

An Ohio County grand jury indicted Jason Barrett on ten counts of first-degree sexual abuse for actions perpetrated against his stepdaughter, K.V., a minor at the time of the sexual abuse.[1] K.V.'s mother, Katherine Barrett, was also indicted on multiple counts of complicity to the sexual abuse.[2] Barrett and Katherine were tried jointly. Before the trial commenced, one count of sexual abuse against Barrett was dismissed. A jury found both Barrett and Katherine guilty of all other counts. Barrett was sentenced to 20 years in prison. He

---

[1] We use abbreviations to identify the victim and her siblings to protect their privacy.

[2] There are multiple Barretts in this case. To avoid confusion, Jason will be referred to as Barrett and Katherine will be referred to by her first name.

appealed his conviction to this Court as a matter of right. *See* KY. CONST. §
110(2)(b). After careful review of the record, we affirm the Ohio Circuit Court.

## I. BACKGROUND

This case involves nine incidents of sexual abuse that occurred between
February 10, 2016, and December 5, 2018. When Barrett committed these
acts, the victim, K.V., was between the ages of 15 and 17. During this period,
K.V. lived in the same household as Barrett, Katherine, her older sister E.M.,
and her three younger siblings. When K.V. was living with Barrett and
Katherine she also had an older boyfriend who lived in Georgetown, Kentucky.
K.V. told her boyfriend about the sexual abuse and showed him some of her
diary entries recalling events surrounding the abuse.

In December 2018, K.V. wanted to stay with her boyfriend for two weeks
around the holidays. At first Barrett and Katherine said yes but objected when
she wanted to stay longer. Their objection was because she was only 17 years
old. Around the same time, K.V.'s boyfriend reported the sexual abuse to his
teacher on December 6, 2018.

When K.V.'s boyfriend reported the sexual abuse to his teacher, the
teacher contacted the Cabinet for Health and Family Services. The
aforementioned report led to a welfare check at the Barrett home by deputies
with the Ohio County Sheriff's Department on December 6, 2018. K.V., fearing
a truthful disclosure would lead to her and her siblings being placed in foster
care, denied that any abuse occurred. The police conducted another interview

with K.V. outside of the home on December 7, 2018, where she then told Detective Katie Pate that she was sexually abused by Barrett. Detective Pate also interviewed Barrett and Katherine. Barrett admitted to touching K.V. on the buttocks but claimed it was not sexual. Katherine initially denied seeing Barrett touch K.V. inappropriately but later admitted seeing him touch her buttocks. Katherine insisted that the touching was not sexual.

At trial, K.V. testified to the nine incidents of sexual abuse and read aloud from her diary entries. Barrett testified in his own defense and denied he sexually abused his stepdaughter. Katherine testified she never knew or saw Barrett touch K.V. inappropriately. E.M. testified she shared a room with K.V. who never told her anything about Barrett sexually abusing her.

After two days of trial, the jury found Barrett guilty of all nine counts of first-degree sexual abuse, and Katherine guilty of two counts of complicity to sexual abuse. The trial court sentenced Barrett to a total of twenty years in prison. Barrett now appeals to this Court as a matter of right alleging multiple errors.

## II. ANALYSIS

On appeal, Barrett alleges multiple errors by the trial court warranting reversal of his conviction. First, he argues the Commonwealth engaged in flagrant prosecutorial misconduct when the prosecutor told the jury in closing argument, "[t]hat presumption of innocence, I would submit to you is gone because you've heard the proof beyond a reasonable doubt." Second, he argues the trial court erroneously allowed K.V. to read from printed screenshots of her

3

iPad diary. Third, Barrett argues the trial court erred by allowing the Commonwealth to ask a witness to comment on the credibility of another witness. Fourth, he argues the jury instructions violated his right to a unanimous verdict. Finally, Barrett argues this Court should overturn his conviction based on cumulative error. We discuss each argument in turn.

## A. The prosecutor's closing argument was improper but was not flagrant prosecutorial misconduct.

Barrett argues the Commonwealth engaged in flagrant prosecutorial misconduct during its closing argument. Specifically, he argues that the flagrant prosecutorial misconduct occurred when the prosecutor told the jury that the "presumption of innocence, I would submit to you is gone because you've heard the proof beyond a reasonable doubt." Barrett argues that single comment was flagrant prosecutorial misconduct and violated his right to a fair trial.

"Prosecutorial misconduct is 'a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Commonwealth v. McGorman*, 489 S.W.3d 731, 741–42 (Ky. 2016) (quoting *Noakes v. Commonwealth*, 354 S.W.3d 116, 121 (Ky. 2011)). "If the misconduct is objected to, we will reverse on that ground if proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury." *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010). However, if no objection is made, the Court "will reverse only

4

where the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Id.* (citations omitted).

No contemporaneous objection was made, and Barrett concedes that this issue is unpreserved. Because the issue is unpreserved, Barrett requests we review it for palpable error. *See* RCr 10.26.

Barrett argues the Commonwealth committed flagrant prosecutorial misconduct in its closing argument when the prosecutor told the jury,

> By the way, the presumption of innocence at this point in time [sic]. You've heard the proof. You've heard the evidence. You've heard this child tell you, in details that I didn't want to have to get into in mixed company, but we have to, to hold these people accountable. *That presumption of innocence, I would submit to you is gone because you've heard the proof beyond a reasonable doubt.* There is no reasonable doubt what happened in this case. Because this child told you the truth.

(emphasis added). In support of his argument, Barrett cites to a Washington Court of Appeals decision that reversed the defendant's conviction because the prosecutor made repeated improper comments in closing, including that the presumption of innocence "kind of stops once you start deliberating." *State v. Evans*, 260 P.3d 934, 938 (Wash. Ct. App. 2011). Barrett argues that in Kentucky "every person accused of committing a crime is entitled to the presumption of innocence and to have such presumption continue until guilt[] is proven beyond a reasonable doubt." *Newkirk v. Commonwealth*, 937 S.W.2d 690, 695 (Ky. 1996). Overall, Barrett asserts the Commonwealth's comment was flagrant prosecutorial misconduct because it was a misstatement of the law that "seriously dilutes the State's burden of proof" and "render[ed] the trial

5

fundamentally unfair." *See Evans*, 260 P.3d at 939; *Brafman v. Commonwealth*, 612 S.W.3d 850, 861 (Ky. 2020) (citation omitted).

Prosecutorial misconduct can occur through an improper closing argument. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016) (citing *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)). Any allegation of misconduct must be viewed in the context of the overall fairness of the trial. *McGorman*, 489 S.W.3d at 742 (citing *St. Clair v. Commonwealth*, 451 S.W.3d 597, 640 (Ky. 2014)). To justify reversal, the Commonwealth's misconduct must be "so serious as to render the entire trial fundamentally unfair." *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky. 2004) (quoting *Stopher v. Commonwealth*, 57 S.W.3d 787, 805 (Ky. 2001)).

This Court holds that the Commonwealth's comment in its closing argument "that presumption of innocence, I would submit to you is gone because you've heard the proof beyond a reasonable doubt" is prosecutorial misconduct. Prosecutors have wide latitude in closing and are free to draw any and all reasonable inferences from the evidence. *Murphy v. Commonwealth*, 509 S.W.3d 34, 50 (Ky. 2017) (citations omitted). However, prosecutors do not have latitude to "shift the burden of proof" or "contravene the presumption of innocence" during closing arguments. *See Tamme v. Commonwealth*, 973 S.W.2d 13, 38–39 (Ky. 1998); *Grundy v. Commonwealth*, 25 S.W.3d 76, 82 (Ky. 2000). "[T]he presumption of innocence mandates the burden of proof and production fall on the Commonwealth, any burden shifting to a defendant in a criminal trial would be unjust." *Butcher v. Commonwealth*, 96 S.W.3d 3, 10 (Ky.

6

2002). "Every person accused of committing a crime is entitled to the presumption of innocence and to have such presumption continue until guilt[] is proved beyond a reasonable doubt." *Newkirk*, 937 S.W.2d at 695. Further, the presumption of innocence "remains with the defendant through every stage of trial, most importantly, the jury's deliberations," and it is only extinguished upon the jury's determination of guilty beyond a reasonable doubt. *United States v. Marin*, 31 F.4th 1049, 1055 (8th Cir. 2022) (quoting *Kellogg v. Skon*, 176 F.3d 447, 451 (8th Cir. 1999)); *see also United States v. Crumley*, 528 F.3d 1053, 1065 (8th Cir. 2008) (holding the prosecutor's remark that the presumption of innocence "can be removed by fact, by proof" was improper).

The Commonwealth, in its closing, went through the jury instructions. When the prosecutor got to Jury Instruction #3, he did not read it verbatim. That instruction was as follows:

> [t]he law presumes the defendant innocent of a crime, and the indictment shall not be considered evidence or as having any weight against the defendant. You shall find the defendant not guilty unless you are satisfied from the evidence alone and beyond a reasonable doubt that the defendant is guilty. If upon the whole case you have reasonable doubt that the defendant is guilty, you shall find the defendant not guilty.

The Commonwealth commented on this instruction by saying that "at this point in time" the presumption of innocence is gone because "you've heard the proof beyond a reasonable doubt." The prosecutor followed up that statement with "there is no reasonable doubt what happened in this case." The prosecutor's comment is improper because it suggests that at closing argument the defendant is no longer presumed innocent, which is simply not true. Any

7

suggestion otherwise shifts the burden of proof away from the Commonwealth and on to the defendant. This is also not a reasonable inference from the evidence because it is a mischaracterization of the jury instruction's language and the law. A prosecutor cannot argue that the presumption of innocence is gone in his or her closing argument because it implies the jury should ignore the defendant's presumption of innocence when it begins its deliberations. For those reasons, this Court finds that the Commonwealth engaged in prosecutorial misconduct. However, because Barrett did not object, we must now determine if that prosecutorial misconduct is sufficient to be "flagrant" prosecutorial misconduct.

Because this issue is unpreserved, we will reverse only if the conduct was both flagrant and constitutes palpable error resulting in manifest injustice. RCr 10.26; *Matheney v. Commonwealth,* 191 S.W.3d 599, 606, 607 n.4 (Ky. 2006). To determine whether improper conduct is flagrant and requires reversal, this Court weighs four factors: (1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused. *Brafman,* 612 S.W.3d at 861 (footnotes omitted). We look at the claimed error in context to determine whether, as a whole, the trial was rendered fundamentally unfair. *Id.* (footnote omitted).

Regarding the first part of the test, the Commonwealth's comment that the presumption of innocence is gone served to prejudice Barrett. Barrett

8

began the trial from a place of innocence and that innocence stayed with him throughout the entire trial. *Newkirk* 937 S.W.2d at 695; *Marin,* 31 F.4th at 1055. He could only be found guilty if the jury determined that the Commonwealth had presented enough evidence to overcome that presumption and had met its burden of proof. The prosecutor suggested however, that the presumption of innocence was, at the time of closing arguments, gone because the evidence proved beyond a reasonable doubt that Barrett was guilty. That comment to a jury of lay people who are not educated in the law invites them to draw an adverse inference of guilt and indicates that they no longer need to consider Barrett's presumption of innocence. This was prejudicial, and this factor favors Barrett.

As to the second part of the test, the Commonwealth's remark was isolated. The prosecutor made the comment once in his approximately 45-minute-long closing argument. This Court has held that a few sentences that were spoken in the middle of the Commonwealth's 55-minute-long closing argument were isolated because the comments were not repeated or even emphasized. *Hall v. Commonwealth,* 645 S.W.3d 383, 399 (Ky. 2022). Since the Commonwealth's comment regarding the presumption of innocence was mentioned only once during its 45-minute-long argument, it was isolated, and this factor weighs in favor of the Commonwealth.

The third part of the test favors Barrett because the Commonwealth deliberately placed the comment in front of the jury. The prosecutor went through the jury instructions and explained the evidence in support of a guilty

9

verdict. He contradicted the jury instruction language regarding presumption of innocence when he argued that the "presumption of innocence, I would submit to you is gone because you've heard the proof beyond a reasonable doubt." There is nothing to suggest that the prosecutor was not acting deliberately when he placed that comment in front of the jury. *See Mayo v. Commonwealth,* 322 S.W.3d 41, 56 (Ky. 2010) (holding that the Commonwealth's comments that a "good jury" would find the defendant guilty was deliberately placed in front of the jury). Further, recently in *Sanders v. Commonwealth,* an attorney from the same Commonwealth's Attorney's office used similar language in his closing argument. No. 2022-SC-0084-MR, 2023 WL 4037450, *6 (Ky. Jun. 15, 2023). [3] The foregoing considerations, taken in conjunction with each other, lead us to conclude it was deliberate and not an accidental misstatement.

Finally, we must evaluate the strength of the evidence against Barrett. This case was a two-day trial with six witnesses. A substantial part of the Commonwealth's case against Barrett was K.V.'s testimony and her journal entries.[4] K.V. testified to nine separate incidents of sexual abuse by Barrett. She could not testify to the exact dates on which the sexual abuse occurred,

---

[3] We acknowledge that in *Sanders* we held that the prosecutor's comment "presumption of innocence is gone" was not misconduct; however, the cases are factually distinguishable. *Sanders,* 2023 WL 4037450, at *6. The prosecutor in *Sanders* told the jury before and after he said the "presumption of innocence is gone" that the defendant is presumed innocent unless the jury was satisfied beyond a reasonable doubt that the defendant was guilty. *Id.* The prosecutor in *Sanders* repeatedly told the jury that the defendant was presumed innocent. *Id.* This stands in stark contrast to the case at bar.

[4] This Court holds no error in the trial court allowing K.V. to read the printed screenshots of her diary entries from her iPad, as will be addressed later.

but she recalled the room of the house and the specific circumstances surrounding each incident of sexual abuse. The defense argued that K.V. lied about the sexual abuse because she was upset that she could not stay with her boyfriend. To support the defense's argument, Barrett testified that he never inappropriately touched his stepdaughter. Katherine, and E.M. testified to never seeing Barrett sexually abuse K.V. However, Katherine admitted to seeing Barrett touch K.V.'s buttocks area and Barrett admitted to touching K.V.'s buttocks area.

K.V.'s journal entries corroborated her testimony and discredited the defense's theory of the case. Several journal entries contained details that matched K.V.'s testimony. Further, the entries were dated months before K.V. asked to stay with her boyfriend and her alleged motive to lie arose. Finally, one of the journal entries explained that K.V. lied to the police initially because she was "scared of losing everything" if she and her siblings were taken into foster care. Considering all the evidence against Barrett, K.V.'s testimony, and corroborating journal entries, this factor weighs in favor of the Commonwealth.

Having found two of the four factors weigh in favor of Barrett, "we must use the general test for whether relief for prosecutorial misconduct is proper: an examination of the trial as a whole to determine if the improper comments undermined the essential fairness of [Barrett's] trial." *Mayo*, 322 S.W.3d at 57 (citation omitted) (finding two factors of the flagrant prosecutorial misconduct analysis in favor of the defendant and two in favor of the Commonwealth). As stated above, the Commonwealth did not repeat throughout its 45-minute-long

11

closing argument that the defendant's presumption of innocence is gone. Before closing arguments, the trial court read the instructions to the jury. The jury members each also received a copy of the jury instructions to take with them into deliberations. The Commonwealth's one improper comment in the entire closing argument is not likely to have had a great enough impact to undermine the essential fairness of Barrett's trial. We hold that the Commonwealth's improper comment that the presumption of innocence is gone did not amount to flagrant prosecutorial misconduct. We cannot conclude that the Commonwealth's comment in closing argument was so egregious that it undermined the essential fairness of Barrett's trial. *Hall,* 645 S.W.3d at 400 (citation omitted).

As we have previously explained,

> [A]n unpreserved error may be reviewed on appeal if the error is palpable and affects the substantial rights of a party. . . . Even then, relief is appropriate only upon a determination that manifest injustice has resulted from the error. . . . An error is palpable, only if it is clear or plain under current law. . . . Generally, a palpable error affects the substantial rights of a party only if it is more likely than ordinary error to have affected the judgment. . . . We note that an unpreserved error that is both palpable and prejudicial, still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice; in other words, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable.

*Miller v. Commonwealth,* 283 S.W.3d 690 695 (Ky. 2009) (internal citations and quotation marks omitted). For all the reasons discussed above, the Commonwealth's closing argument comment about the presumption of innocence is not palpable error.

## B. The trial court did not err in allowing K.V. to read the printed screenshots of her diary entries from her iPad.

Barrett next argues that the trial court erred in allowing K.V. to read from printed screenshots of her iPad diary. Barrett concedes this issue is unpreserved. Because the issue is unpreserved, Barrett requests palpable error review. *See* RCr 10.26.

During a bench conference, the prosecutor alerted the trial court that K.V. kept dated notes on her iPad, like a diary. The prosecutor wanted to ask K.V. about her diary entries because he wanted to show the dates she began writing about the sexual abuse. The dates were important because the diary entries were written before K.V. was denied her request to stay with her boyfriend for longer than originally planned. Therefore, the dates disproved the defense's theory that she was lying in order to stay longer with her boyfriend.

The trial court ruled that the Commonwealth could not introduce the diary entries as exhibits, but the prosecutor could ask K.V. about them and she could read from them. The next day, the trial court reiterated that the screenshots were not to be admitted as exhibits, but the court ruled that K.V. could read from them to refresh her memory. After K.V. testified about the nine incidents of sexual abuse, the Commonwealth's Attorney asked her about the screenshots of her diary. The prosecutor instructed K.V. to state the date of the first diary entry and to read the contents of the diary entry. Then, the prosecutor instructed K.V. to read the entirety of another diary entry that was not dated. K.V.'s testimony continued with her reading three more dated diary entries in their entirety.

13

Barrett notes the prosecutor never stated what rule of evidence permitted him to ask K.V. to read the contents of her iPad diary. The trial court, however, saw the readings as a refreshing of K.V.'s recollection. Barrett argues that two rules of evidence are implicated in this issue: Kentucky Rule of Evidence ("KRE") 612 and KRE 803(5).

KRE 612 provides:

> [I]f a witness uses a writing during the course of testimony for the purpose of refreshing memory, an adverse party is entitled to have the writing produced at the trial or hearing or at the taking of a deposition, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Barrett correctly argues that KRE 612 "codifies the common-law rule allowing any writing to be used to refresh a witness's memory if necessary." *Martin v. Commonwealth*, 456 S.W.3d 1, 15 (Ky. 2015). "[W]hen that witness refreshes her memory under this rule, the testimony elicited thereafter 'is the product of the refreshed memory, not the writing used to refresh it.' As a result, the document itself is not admissible, and the hearsay rule does not apply." *Id.* Barrett argues that the Commonwealth improperly refreshed K.V.'s recollection. The prosecutor never asked K.V. to read the diary to herself before reading it aloud to the jury. Barrett argues that a writing cannot be read aloud and introduced into evidence under the pretext of refreshing the recollection of a witness. *Fisher v. Commonwealth*, 620 S.W.3d 1, 15 (Ky. 2021) (citation omitted).

KRE 803(5), on the other hand, states:

Recorded Recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.

Barrett argues the prosecutor did not lay the foundation for K.V. to read her notes into the record under KRE 803(5). Barrett argues K.V. did not have "insufficient memory" to be able to testify fully and accurately, as she never expressed any difficulty describing the events.

The Commonwealth, on the other hand, argues that neither KRE 612 nor KRE 803(5) apply because Barrett's opening statement made K.V.'s diary entries admissible as prior consistent statements under KRE 801A.

Under KRE 801A(a)(2),

[a] statement is not excluded by the hearsay rule . . . if the declarant testifies at the trial or hearing and is examined concerning the statement, with a foundation laid as required by KRE 613, and the statement is . . . [c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

See also Murray v. Commonwealth, 399 S.W.3d 398, 403 (Ky. 2013). Importantly, "a prior consistent statement is admissible to rebut a charge of recent fabrication only if the statement was made before the alleged motive to fabricate came into existence." Slaven v. Commonwealth, 962 S.W.2d 845, 858 (Ky. 1997) (citation omitted).

In his opening statement, defense counsel said the following:

15

> What we want you to do is hear what [K.V.] said and also why she said it. What was her aim? Did she have an aim? Did she have an agenda? We think she did. We think that agenda was to get out of the home to go with this boyfriend. That's what we believe.

The defense implied in its opening statement that K.V. had a motive to lie about the sexual abuse. Barrett's attorney argued K.V.'s motive to lie about the sexual abuse arose in December 2018 when Barrett and Katherine denied her request to stay with her boyfriend. We do not know the exact date in December 2018 when Barrett and Katherine denied this request. However, we do know that her boyfriend told his teacher about the sexual abuse on December 6, 2018, and K.V. did not disclose the sexual abuse to the Cabinet for Health and Family Services during the initial welfare check on that same day. The defense argued that K.V.'s desire to stay with her boyfriend was the reason K.V. told Detective Pate about the sexual abuse during her interview with police on December 7, 2018.

During a bench conference, the Commonwealth explained to the trial court that it was going to introduce the diary entries to rebut the defense's theory that K.V. lied about the sexual abuse. Under KRE 801A(a)(2), the diary entries are consistent with K.V.'s testimony that she was sexually abused and were offered to rebut the implied charge that K.V. lied about the sexual abuse. Further, the prior consistent statements were all made before the motive to lie arose. Even though K.V. did not document every incident of sexual abuse with a diary entry, the entries she did document were dated before she asked Barrett and Katherine to stay with her boyfriend in December 2018. We do not know the date of the last incident of sexual abuse, but we do know the sexual

16

abuse stopped after December 7, 2018, because K.V. no longer lived with Barrett.

The first diary entry was dated March 10, 2017. The second diary entry was undated. We know the second diary entry was composed sometime before December 2018 because of the contents of the entry and what K.V. did after writing the diary entry. In the second diary entry, K.V. wrote that Barrett touched her buttocks area again while she was sleeping, she told her boyfriend about the incident a week later, and she told no one else. K.V. testified that she sent screenshots of the diary entry to her boyfriend at least three weeks before December 6, 2018. When the boyfriend reported the abuse to a teacher on December 6, 2018, he provided the teacher with screenshots of K.V.'s diary entries. In addition, we know that the undated diary entry is before December 2018 because the next two diary entries are from June 22, 2018, and June 23, 2018.

The last diary entry is from December 6, 2018. This diary entry does not discuss any incident of sexual abuse. Instead, the entry is about how K.V. lied to the police and case worker about the sexual abuse. K.V. initially told the police that no sexual abuse occurred because she feared a truthful disclosure would result in her and her siblings being split up. All the diary entries were made before December 7, when K.V. told the police that Barrett sexually abused her. All the diary entries that discuss incidents of sexual abuse were composed before she asked to stay with her boyfriend. The diary entries qualify under KRE 801A as prior consistent statements because the entries were

17

composed before the "fabrication or improper influence, or motive arose" in December 2018.

Barrett argues that even if the diary entries were prior consistent statements, the proper foundation was not laid as required by KRE 613. Under KRE 613(a),

> Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place, and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it.

The proper foundation was laid because the prosecutor asked K.V. if she was the one who made the diary entries, and the prosecutor asked for the date of the diary entries. K.V. stated that she was the one who created the diary entries and provided some of the dates for the entries. Regarding the undated diary entry, K.V. recounted the details of the entry before reading it aloud. We hold that the proper foundation was laid, and K.V.'s diary entries were admissible under KRE 801A.

As to Barrett's argument that the diary entries were prohibited under KRE 404(b) and KRE 403, we are unconvinced. Barrett argues the entries contained other uncharged offenses and bad acts prohibited by KRE 404(b). Evidence of other crimes, wrongs, or acts may be admissible if offered for some other purpose, such as proof of motive or intent. KRE 404(b)(1). To determine if the other bad acts evidence is admissible, "the trial court should use a three-prong test: (1) is the evidence relevant? (2) does it have probative value? (3) is its probative value substantially outweighed by its prejudicial effect?" *Leach v.*

18

*Commonwealth*, 571 S.W.3d 550, 554 (Ky. 2019) (citation omitted). For evidence to be relevant it must be offered to prove material facts in dispute. *Id.* Here, to the extent the diary entries included other bad acts, the contents of the diary entries were offered to prove Barrett's intent when he inappropriately touched K.V. and made lewd comments about her body. This evidence is relevant because it goes to a material fact in dispute of whether Barrett sexually abused K.V. The diary entries are also probative because the jury could reasonably infer that the prior bad acts occurred and that Barrett committed such acts. *Id.* (citing *Parker v. Commonwealth*, 952 S.W.2d 209, 214 (Ky. 1997)). The probative value is not substantially outweighed by the prejudicial effect because the evidence is not being offered to produce an emotional response that inflames the passions of the jury. *Id.* The evidence was offered to rebut the defense's theory that K.V. lied about the sexual abuse, and it shows Barrett's intent to commit the acts. For the same reasons as above, K.V.'s diary entries did not violate KRE 403.

Barrett also argues the prosecutor failed to give notice under KRE 404(c). Defense counsel knew of the diary entries during the bench conference, and apparently had been provided them in discovery, so there is no violation of KRE 404(c).

Finally, Barrett argues the diary entries improperly bolstered K.V.'s credibility. Barrett cites *Hoff v. Commonwealth*, 394 S.W.3d 368 (Ky. 2011), to support this argument. In *Hoff*, this Court held that the hearsay statements were not admissible under KRE 803(4). *Id.* at 374. K.V.'s diary entries are

19

distinguishable from the statements in *Hoff* because they were admissible prior consistent statements under KRE 801A.

For all those stated reasons, K.V.'s diary entries were admissible under KRE 801A, and the trial court did not err in allowing K.V. to read from those entries.

## C. The trial court did not commit palpable error in allowing the Commonwealth to question Barrett about K.V.'s credibility.

Barrett argues that the trial court erred in allowing the Commonwealth to question him on cross-examination about K.V.'s credibility. Barrett concedes this issue is unpreserved. Because the issue is unpreserved, Barrett requests palpable error review. *See* RCr 10.26.

Barrett argues that during his testimony, the Commonwealth repeatedly badgered him about K.V.'s motive to lie in her testimony. The line of questioning that Barrett argues is in error is as follows:

> Commonwealth ("CW"): Now you're telling this jury that...do you remember in June 2018, did you ever read the note she made in her iPad on that date, June 22, 2018, about how she told her mom about what you'd been doing to her?
>
> Barrett: That never occurred.
>
> CW: You don't remember having a conversation with your wife and K.V. ...
>
> Barrett: That never happened.
>
> CW: ... on June 22, 2018, when she told her mom?
>
> Barrett: That never happened.
>
> CW: Why would she tell the jury that if that never happened?
>
> Barrett: I don't understand why.

20

CW: You don't understand why because she has no reason to say it, does she?

Barrett: (No answer) ....

Barrett provides other examples of questioning during his cross examination where he was asked by the prosecutor to comment on K.V.'s credibility. In one of those examples, the Commonwealth asked Barrett:

[You are] the one here sitting here on trial looking at 12, 15 people in the face with everything to lose but this child since June 2018 documenting when [she is] telling her mom way before [you are] saying oh she wants to run off to Scott County in December – this is in June. This child has no reason to put in there that [she has] told her mom and had been documented for over a year before that you [were] touching her. You [do not] know any reason for that child to state that *other than it would be true*, do you?

(emphasis added). Barrett argues that the prosecutor's repeated questioning about the truthfulness of K.V.'s testimony violated *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997).

In *Moss*, this Court held that "[a] witness should not be required to characterize the testimony of another witness, particularly a well-respected police officer, as lying." *Id.* at 583. We noted that, with a few exceptions, "it is improper to require a witness to comment on the credibility of another witness." *Id.* (quoting *State v. James*, 557 A.2d 471, 473 (R.I. 1989)). We further said that "[a] witness's opinion about the truth of the testimony of another witness is not permitted. Neither expert nor lay witnesses may testify that another witness or a defendant is lying or faking. That determination is within the exclusive province of the jury." *Id.* (quoting *James*, 557 A.2d at 473).

21

In *Graham v. Commonwealth*, this Court found no *Moss* violation because the Commonwealth did not ask the defendant to call other witnesses liars and did not put the defendant in an unflattering light by its questioning. 571 S.W.3d 575, 585 (Ky. 2019). During cross-examination, the defendant testified to the last time he had interacted with the victims. *Id.* at 584–85. The defendant testified that the victims became upset that he would not take them fishing. *Id.* at 585. The Commonwealth asked the defendant whether it was his belief that the victims' behavior was "why [he was] here today" in trial. *Id.* Defense counsel objected to the question, and the Commonwealth explained that the defendant implied the two boys conspired against him because they were angry at him. *Id.* The trial court overruled the objection, and the Commonwealth continued to ask the defendant whether the victims "concocted" the story. *Id.* The defendant in response stated he did not know why the charges were brought against him. *Id.*

This Court held it was clear that the version of events the defendant testified to stood in stark contrast with the testimony of other witnesses, and the Commonwealth was attempting to clarify the defendant's testimony. *Id.* The defendant presented a motive for the boys to make up a story concerning the abuse, and the Commonwealth fleshed that out through a line of questions. *Id.* The line of questioning in the case at bar is distinguishable from *Graham* because Barrett was repeatedly asked why K.V. would say something if it did not happen. The questioning went beyond simply fleshing out the defense's

22

theory. The Commonwealth was trying to have Barrett comment on K.V.'s credibility as a witness.

The Commonwealth argues its line of questioning in the case at bar was not improper because the prosecutor did not ask Barrett to state K.V. was lying. Instead, he asked Barrett what motive K.V. had to give false testimony. The Commonwealth asked these questions after defense counsel presented the theory that K.V. conjured the allegations after her parents denied her request to stay with her boyfriend and after Barrett's testimony that K.V.'s allegations "never happened." The Commonwealth argues that other jurisdictions allow questioning of a defendant regarding their accuser's motive to lie and that this does not cross into improperly asking the defendant if another witness is lying. *See, e.g., United States v. Cole*, 41 F.3d 303, 309 (7th Cir. 1994); *State v. Waholic*, 897 A.2d 569, 590 (Conn. 2006) (citations omitted) ("[W]e have distinguished between improperly asking the defendant to comment on the veracity of another witness' testimony and properly questioning the defendant about his accuser's motive in testifying against him.").

We agree with Barrett that the Commonwealth's line of questioning was improper because the prosecutor repeatedly asked Barrett to opine about the truth of K.V.'s testimony. The Commonwealth did not explicitly ask Barrett whether K.V. was lying but repeatedly asked Barrett to give a reason why K.V. would say something if it never happened. This is like the questioning in *Moss* because the Commonwealth's questions were framed in such a way to get Barrett to call K.V. a liar. Barrett repeatedly denied that certain events

23

happened, and the Commonwealth repeatedly asked why K.V. would testify that it occurred if it did not happen. Asking Barrett to question whether K.V. is someone who would testify to something that did not occur placed him in an unflattering light and attempted to take the determination of K.V.'s truthfulness away from the jury.

Although the Commonwealth's line of questioning was improper it did not rise to palpable error. "Palpable error will compel us to reverse only where the error substantially affects the rights of the defendant in a way so obvious and serious that we find there to be manifest injustice." *Brafman*, 612 S.W.3d at 857 (citation omitted). The defense's theory of the case was that K.V. lied about the sexual abuse because Barrett and Katherine did not allow her to stay with her boyfriend. The Commonwealth's cross-examination pressed Barrett on that theory. This Court has not yet found such a *Moss* violation to rise to palpable error under RCr 10.26. *Parker v. Commonwealth*, 482 S.W.3d 394, 406 (Ky. 2016) (citing *Luna v. Commonwealth*, 460 S.W.3d 851, 879 (Ky. 2015)). Likewise, this Court holds that the Commonwealth's questioning was a *Moss* violation, but it did not amount to palpable error.

## D. The jury instructions did not violate Barrett's right to a unanimous verdict.

We now turn to Barrett's argument that the jury instructions violated his right to a unanimous verdict. Barrett concedes this issue is unpreserved. Because the issue is unpreserved, Barrett requests palpable error review. *See* RCr 10.26.

Section 7 of the Kentucky Constitution guarantees that "a defendant cannot be convicted of a criminal offense except by a unanimous verdict." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) (citations omitted). "[T]he Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense." *King v. Commonwealth,* 554 S.W.3d 343, 354 (Ky. 2018) (quoting *Miller v. Commonwealth,* 77 S.W.3d 566, 576 (Ky. 2002)). "[A] trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Harp v. Commonwealth,* 266 S.W.3d 813, 818 (Ky. 2008). In *Johnson v. Commonwealth*, we held, "a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—violates the requirement of a unanimous verdict." 405 S.W.3d 439, 449 (Ky. 2013).

Barrett argues his right to a unanimous verdict was violated because the jury instructions made it impossible for the jury to distinguish the nine counts of sexual abuse from each other. During trial, the Commonwealth elicited proof that multiple incidents of sexual abuse occurred. The prosecutor asked K.V. to provide details surrounding each instance of sexual abuse. To distinguish the incidents, the prosecutor asked K.V. to describe the room she was in when the sexual abuse occurred and the surrounding circumstances. K.V. also read from

25

multiple diary entries that she kept during the period of the sexual abuse incidents. Barrett argues that the prosecutor failed to match K.V.'s testimony to the diary entries, and that this failure made it impossible for the jury to distinguish one instance from the others. Further, he argues that the prosecutor, in his closing argument, reminded the jury that K.V. testified that the sexual abuse occurred often and that it was almost impossible for her to tell the jury everything that happened to her. Barrett argues that K.V.'s testimony that the sexual abuse happened "quite often" allowed the jurors to return nonunanimous verdicts regarding the specific acts of sexual abuse for which they found him guilty.

We do not agree with Barrett's argument that the jury instructions violated his right to a unanimous verdict. Unlike the jury instructions in *King*, where the jury was presented with multiple instances of sexual abuse for each instruction, the jury instructions in Barrett's case included identifying characteristics that corresponded with an individual instance of sexual abuse. *King*, 554 S.W.3d at 350. In *King*, Jury Instruction #5 read:

> You will find the Defendant, Ronald King, guilty of Sexual Abuse in the First Degree under this Instruction and under Count One of the Indictment, if and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in Kenton County on or between May 2010 and March 2013 and before the finding of the Indictment herein, he subjected A.S. to sexual contact at 414 Garvey Avenue;
>
> AND,
>
> B. That at the time of such contact, A.S. was less than twelve years of age.

26

*Id.* This Court held that Jury Instruction #5 violated King's right to a unanimous verdict because the victim testified to three separate instances of inappropriate sexual contact that occurred during the applicable time period and at the applicable location. *Id.*

In the case at bar, Jury Instructions #4-12 set forth each of the nine counts of sexual abuse against Barrett. Each jury instruction included details that corresponded to specific circumstances. By way of example, Jury Instruction #4 stated as follows:

> You will find the Defendant, Jason Barrett, guilty of Sexual Abuse in the First Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> a. That in this county on or between February 10, 2016 through December 5, 2018 and before the finding of the Indictment herein, he subjected [K.V.] to sexual contact when he touched her upper inner thigh with his hand for the first time while [K.V.] was laying in her mother's bed;
>
> AND
>
> b. That at the time of such occurrence, [K.V.] was less than 18 years of age;
>
> AND
>
> c. That at the time of such occurrence, the Defendant was a person in a position of authority;
>
> AND
>
> d. That the Defendant came into contact with [K.V.] as a result of his position of authority.

K.V. testified to the specific incident of sexual abuse provided in Jury Instruction #4. She stated that sometime between February 10, 2016, and December 5, 2018, Jason sexually abused her for the first time when she was in her mother's bed. K.V. testified that she felt someone touch her leg and

27

inner thigh. She testified that the person who touched her leg and inner thigh was Barrett.

Each jury instruction between 4 and 12 contained a different set of facts describing a specific incident of sexual abuse committed by Barrett and testified to by K.V. Another example is Jury Instruction #6 which instructed the jury to find Barrett guilty if "he subjected [K.V.] to sexual contact when he touched [K.V.'s] vagina under her clothing with his hand while she was laying on her bed on the occurrence where her mother had gone to the store." K.V. testified that Barrett touched her vagina under her clothing while she was laying on her bed. She also testified that this happened when her mother went to the store. K.V. did not testify to any other sexual abuse that would have fit within the language of this instruction.

Upon review of each of the instructions and all of K.V.'s testimony, it is clear that each instruction described a specific instance of sexual abuse testified to by K.V. Thus, the jury instructions were not in error and did not violate Barrett's right to a unanimous jury verdict.

**E. There is no cumulative error**

Finally, Barrett argues his conviction should be reversed due to cumulative error. Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). "Where, as in this case, however, none of the errors individually raised any real question of prejudice, we have declined to

28

hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34, 53 (Ky. 2002)).

In this case, there were two errors. It was improper for the prosecutor to tell the jury in his closing argument that the "presumption of innocence, I would submit to you is gone because you've heard the proof beyond a reasonable doubt." It was also improper for the trial court to allow the Commonwealth to repeatedly question Barrett about K.V.'s credibility. Neither of these errors "raised any real question of prejudice." *Id.* Accordingly, we hold there was no cumulative error in this case.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Ohio Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Robert Lee Baldridge
Assistant Attorney General

29